888 A.2d 783

COMMONWEALTH of Pennsylvania, Appellant

v.

Jose INFANTE, Appellee.

Supreme Court of Pennsylvania.

Argued March 9, 2005.

Decided Dec. 29, 2005.

Hugh J. Burns, Philadelphia, Peter Carr, Jason E. Fetterman, for the Com. of PA., appellant.

Karl Baker, Peter Rosalsky, Philadelphia, for Jose Infante, appellee.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice CASTILLE.

The instant matter is an appeal by the Commonwealth from an order of the Superior Court vacating appellee's judgment of sentence. The sole issue before this Court is whether the sentencing court had the authority to revoke appellee's probation and impose a prison sentence on the basis of a conviction that occurred subsequent to the imposition of probation, where, at the time probation was imposed, the criminal conduct underlying that conviction was known to the court but the court deferred consideration of the crime pending the outcome of the trial. For the following reasons, we hold that the trial court had the authority to sentence appellee as it did, and we therefore reverse the order of the Superior Court and reinstate the trial court's judgment of sentence.

The relevant facts and procedural history of this case are as follows. On December 10, 1999, before the Honorable M. Teresa Sarmina, appellee entered a negotiated plea of guilty to two charges of possession with intent to deliver a controlled substance ("PWID"), 35 P.S. § 780–113(a)(30). On that same date, the trial court imposed, for each crime, a sentence of one year of Intermediate Punishment to be followed by two years of probation, with the sentences to run concurrently.[1] The

---

1. The offenses were charged on separate bills of information, at CP Nos. 9908–0678 and 9910–0736. Although the record is unclear, the trial court stated that appellant was found to have been in possession of 2.3 grams of cocaine in each case. *See* N.T., 10/29/02, at 9. In its opinion, the trial court stated that its imposition of a term of Intermediate Punishment, pursuant to 42 Pa.C.S. § 9729, was in lieu of a mandatory minimum sentence of three years of imprisonment that

trial court also ordered appellee to complete long-term inpatient care, conduct forty hours of community service, and pay court costs.

Appellee appeared before the trial court again on June 5, 2001, for a violation of probation ("VOP") hearing. The hearing was the result of appellee having been arrested on February 24, 2001, and charged with simple possession of a controlled substance and PWID, both of which charges were held for court.[2] The trial court modified appellee's initial sentence of Intermediate Punishment to include ninety days of house arrest.

At a second VOP hearing on October 29, 2002, appellee's probation officer and the prosecutor informed the court that, although appellee had complied with the court's June 5, 2001 modification order, he had again been arrested on July 24, 2002 and charged with several new offenses for which he was awaiting trial on November 26, 2002. During the hearing, neither the parties nor appellee's probation officer explained the nature or extent of the new charges.[3] However, both the

would otherwise have been required for each PWID conviction under 18 Pa.C.S. § 7508(a)(3) (where defendant is convicted of trafficking between 2 and 10 grams of cocaine and has prior trafficking conviction, three-year mandatory minimum prison sentence required). *See* Trial Ct. slip op. at 1 n. 1. We note that Section 9729(c)(3) expressly states that defendants convicted under Section 7508 are not eligible for Intermediate Punishment; likewise, Section 7508(c) expressly divests sentencing courts of the authority to impose sentences less than those outlined therein. However, the appropriateness of the initial negotiated sentence is not challenged on this appeal, and thus, is not before this Court.

2. Apparently, those charges were eventually discharged.

3. Appellee was charged in three separate bills of information for numerous offenses, committed on three separate dates. For acts occurring on June 19, 2002, appellee was charged with robbery, theft by unlawful taking, theft by receiving stolen property, recklessly endangering another person ("REAP"), simple assault and contempt of court, at CP No. 0208–0229. For acts occurring on July 2, 2002, appellee was charged with contempt of court for violation of a protection from abuse order and harassment, at MC No. 0207–5954. For acts occurring on July 22, 2002, appellee was charged with aggravated assault, REAP, terroristic threats, attempted intimidation, simple assault, possessing an instrument of crime, resisting arrest, and contempt of court, at CP No. 0208–0230. The contempt of court charge at MC No. 0207–5954 was

probation officer and appellee's counsel suggested without contradiction that some or all of the charges arose from a dispute, or disputes, between appellee and an estranged ex-girlfriend. Moreover, appellee's counsel urged the court to consider that "although [the charges] have been held for court ... as with many domestic cases, [the outcome] will rise and fall on the credibility of the complainant." N.T., 10/29/02, at 7. Neither appellee's counsel nor the Commonwealth requested that the VOP hearing be continued pending the outcome of the scheduled trial on the new charges.

In addition to the new criminal charges, it was undisputed at the hearing that appellee also had committed technical violations of the probation by failing to report to his probation officer and failing to maintain employment. N.T., 10/29/02, at 10.[4] Ultimately, the trial court revoked appellee's probation and sentenced him to eleven and one half to twenty-three months of imprisonment, to be followed by two years of probation—*i.e.*, a county jail sentence.[5] In imposing the sentence, Judge Sarmina, in apparent response to defense counsel's reminder that appellee had yet to be tried on the new charges, made clear that her determination was limited to appellee's technical violations, and that she would await the outcome of appellee's trial on the new charges before determining if a further response was necessary. In so doing, Judge Sarmina expressly admonished appellee, on the record, as to what would ensue if he were found guilty of the new charges:

> THE COURT: [W]hat I am going to do at this time ... is revoke your probation, and that is as to both [CP No. 9908–0678 and No. 9910–0736].... And based on the fact that

dismissed, and the harassment charge at MC No. 0207–5954 was merged with CP No. 0208–0230. All of the charges on the two remaining bills, CP Nos. 0208–0229 and 0208–0230, were held for court and listed for trial on November 26, 2002.

4. In its opinion, the trial court stated that appellee's "technical" violations also included his failure to comply with its previous order to pay court costs, although there is no mention of such failure in the transcript of the October 29, 2002 hearing.

5. Judge Sarmina also ordered appellee to obtain his General Education Diploma ("GED") while in confinement.

those were mandatories, I would be very inclined to send you to state prison today. Also, based on the fact that you previously had a violation hearing, and at that hearing I told you that the next violation would mean state prison. Do you remember that?

[APPELLEE]: Yes. . . .

THE COURT: But based on [the probation officer] having stated that you have been as compliant as you could be with probation and that you did only miss that one reporting time . . . today I am imposing a county sentence with a probation tail. But I want you to be very clear: Right now, as of this moment, that **if you are found guilty of any of the charges presently waiting to go to trial in [Courtroom] 904, . . . I will terminate your parole and send you to state prison. . . .**

N.T., 10/29/02, at 12–14 (emphasis added). When appellee indicated that he did not understand the court's admonition, the court reiterated:

**[I]f there is a guilty verdict on any of those charges, I will terminate your parole. I will revoke your probation and send you to state prison.** I just want you to be aware of it.

N.T., 10/29/02, at 15 (emphasis added). Neither appellee nor the Commonwealth objected to the court's proposed manner of disposition.

On November 26, 2002, following a trial on the pending charges held before the Honorable Rosemarie Defino–Nastasi, appellee was found guilty of robbery, intimidating a witness/victim, and possessing an instrument of crime. He was sentenced on that case to a term of one and a half to three years of imprisonment.

On January 27, 2003, Judge Sarmina held a third VOP hearing, wherein she terminated appellee's parole,[6] revoked his probation, and re-sentenced him to a term of three to six

6. Prior to the third violation hearing, the sentencing court had ordered, on January 3, 2003, that appellee be credited with thirty-eight days of jail time and paroled effective December 20, 2002.

years of imprisonment, to run concurrently with the sentence imposed by Judge Defino–Nastasi for his November 26, 2002 convictions.

On February 14, 2003, appellee timely filed a notice of appeal to the Superior Court. Appellee argued that the trial court erred in finding him to be in violation of probation as a result of criminal behavior that occurred prior to the imposition of such probation.

In an opinion dated May 22, 2003, the trial court rejected appellee's argument, noting that a sentencing court's basis for revoking probation and imposing imprisonment is not restricted to a finding that criminal conduct was committed during the term of probation. Trial Ct. slip op. at 2–3 (citing *Commonwealth v. Brown*, 503 Pa. 514, 469 A.2d 1371 (1983)). Rather, the trial court found that the appropriate focus of a violation hearing is whether the conduct of the probationer indicates that probation will be an effective means to accomplish rehabilitation and deterrence. The court concluded:

In the present case, the January 27, 200[3] violation hearing was prompted by a "subsequent arrest" from when [appellee] had commenced being under this Court's supervision in December 1999. His criminal conduct (of June 19, 2002, and July 22, 2002) which led to the probation revocation in this case occurred *during* that supervision. [Appellee] had never suffered any consequences for these direct violations and therefore this Court's revocation of his probation and imposition of a new sentence was proper. In this Court's view, so long as [appellee] has not already had a transgression punished by this Court, the Court is not precluded from punishing him for said transgression (timeliness issues aside).

Trial Ct. slip op. at 3. Reiterating its point that appellee had never "suffered any consequences" from the criminal conduct underlying the new charges, the court stated that "on October 29, 2002, [appellee's] probation was revoked and a term of imprisonment and new probation imposed after the finding of technical violations. The Court did *not* consider the open cases when it imposed this new sentence." *Id.*

On appeal, the Superior Court agreed with appellee and vacated his sentence. *Commonwealth v. Infante,* 850 A.2d 696 (Pa.Super.2004). The panel began by noting well-settled Pennsylvania law that "a probation violation hearing may be conducted prior to a trial for the criminal charges based on the same activities." *Id.* at 698 (quoting *Brown,* 469 A.2d at 1371). The court then correctly concluded that "[appellee] need not have been convicted of the crimes that took place in June and July 2002 in order for his probation to be revoked on that basis in October 2002." *Infante,* 850 A.2d at 698. The court recognized, however, that appellee's October 2002 revocation and sentence modification was based strictly upon technical violations—*i.e.,* a failure to report to the probation officer and maintain employment—and not the new, pending criminal charges. Thus, the Superior Court formulated the controlling question as follows: "whether the trial court was permitted to revoke [appellee's] probation that was imposed in October 2002, based on the conviction of criminal activity that took place prior to the imposition of that probation...." *Id.*

Finding that no prior Pennsylvania appellate case directly controlled that question, the court relied on what it deemed to be persuasive case law from other jurisdictions and ultimately concluded as follows:

> Because probation is intended to serve as a deterrent to future antisocial conduct, an individual's conduct is viewed prospectively. At the time probation is entered, an individual can do nothing to change the course of events that occurred prior to imposition of probation. Thus, the purpose of probation is not served by looking at conduct occurring prior to probation being imposed.

> * * *

> It was the October 2002 imposed probation that was revoked in January 2003 on the basis of the criminal activity that occurred in June and July 2002. Consequently, we cannot find that [appellee's] probation imposed in October 2002 can be revoked based on criminal conduct that occurred prior to imposition of that probation.

*Id.* at 701. This Court granted allocatur in order to review the authority of the sentencing judge to terminate parole and revoke probation in the face of a succeeding conviction for criminal conduct, where the underlying conduct, but not the conviction, existed at the time of the prior VOP hearing.

The Commonwealth argues that sentencing courts clearly have the authority exercised by the trial court in this case and further notes that 42 Pa.C.S. § 9771(b) provides for the revocation of probation upon proof of a probationer's violation of "specified conditions" of probation. The Commonwealth submits that, in this case, the "accuracy and completeness of the information about [appellee's] prior criminal conduct . . . was the most important factor upon which the [prior] order of probation was made, [and] was an explicit condition" of that order. Commonwealth's Brief at 9. Relying on *Commonwealth v. Royster,* 524 Pa. 333, 572 A.2d 683 (1990), and various opinions of the Superior Court, the Commonwealth argues that a sentencing court's "post-revocation adjustment can, and sometimes must, depend on new information obtained through the disposition of an outstanding case." Commonwealth's Brief at 9. As support for that proposition, the Commonwealth relies on, *inter alia,* the Superior Court's decisions in *Commonwealth v. Bossche,* 324 Pa.Super. 1, 471 A.2d 93 (1984) (probation revocation based on prior criminal convictions upheld where entry of probation was based upon defendant's fraudulent misrepresentation that he had never been convicted of previous crime); *Commonwealth v. Meyer,* 169 Pa.Super. 40, 82 A.2d 298 (1951) (probation revocation based upon failure to comply with restitution upheld where court found that defendant "fraudulently induced" probation order by misrepresenting that he intended to pay); *Commonwealth ex rel. Paige v. Smith,* 130 Pa.Super. 536, 198 A. 812 (1938) (same as *Bossche*). Moreover, the Commonwealth submits that the Superior Court was misguided in relying on the decisional law of other jurisdictions to decide the matter as it did.

In response, appellee argues that the trial court relied on criminal conduct occurring prior to the October 29, 2002 VOP

order as the basis for revocation of that same order, and that such reliance was in error. In appellee's view, each parole/probationary term is forever extinguished upon its revocation and is then replaced by the succeeding VOP sentencing order. The later sentencing order can be violated, appellee argues, only by new conduct occurring **after** the order is entered. Thus, appellee submits that, at the October 29, 2002 VOP hearing, the trial court was faced with the "dilemma" of having to decide whether to impose a county prison sentence—based upon his technical violations of probation—or a state prison sentence—based upon the technical violations as well as the intervening arrest and criminal charges. To properly resolve this dilemma, appellee submits that the trial court could have taken a number of actions, pending the outcome in the intervening, open criminal cases, including, *inter alia*, postponing the probation hearing or revoking probation but deferring the sentence—options which appellee failed to request at the October 29, 2002 VOP hearing. Appellee insists, however, that: "Judge Sarmina could not do what she chose to do—impose a new sentence on October 29, 2002, which included probation, and then revoke this newly imposed probation for conduct that occurred prior to its imposition." Appellee's Brief at 13. Appellee further contends that the trial court's "advance warning" that it would "improperly" sentence appellee if he were later convicted for the open cases did not vitiate the impropriety. Finally, appellee answers the Commonwealth's reliance upon *Bossche*; *Meyer*, and *Paige* by contending that these cases are inapposite because they all involved the defendant's fraud or deceit in obtaining probation, conduct which appellee alleges is absent *sub judice*.[7]

7. In a sur-reply brief filed with leave of this Court, appellee also objects to consideration of the trial court's October 29 probation order as a "conditional probation order," contending that the Commonwealth's allocatur petition did not encompass such a characterization of the order. The contours of the order below are a matter of record fact, and the competing characterizations a matter for zealous advocacy—advocacy ably presented by both parties here. Ultimately, this tangential dispute proves semantic: this Court's consideration of the proper authority of the VOP sentencing court, under the circumstances, necessarily requires an examination of the order below.

 We note at the outset that, although this Court is generally without jurisdiction to review the discretionary aspects of a sentence, *see* 42 Pa.C.S. § 9781(f) ("No appeal of the discretionary aspects of the sentence shall be permitted beyond the appellate court that has initial jurisdiction for such appeals."); *see also Commonwealth v. Smith,* 543 Pa. 566, 673 A.2d 893, 895 (1996), we do have jurisdiction to review an appeal claim involving the legality of a sentence. *See* 42 Pa.C.S. § 9781(a). Furthermore, as the Superior Court aptly noted, the scope of review in an appeal following a sentence imposed after probation revocation is limited to the validity of the revocation proceedings and the legality of the sentence imposed following revocation. *See Commonwealth v. Gilmore,* 465 Pa. 202, 348 A.2d 425, 427 (1975). Here, the argument posed by appellee to the Superior Court, and accepted by that court, did not involve the discretionary aspects of the sentence. Rather, the claim was that the sentencing court simply lacked the authority or power to revoke parole/probation and impose a new VOP sentence under these circumstances. Moreover, the Superior Court's ultimate decision appears to have been based upon the perceived illegality of such a sentence.[8] Accordingly, this Court's jurisdiction over the legal question raised herein is secure. Because the question of the court's sentencing power in this instance is one of law, our review is plenary.

We have been unable to uncover any Pennsylvania appellate case that is controlling as to the precise circumstances and question raised *sub judice*—and the parties point to none. However, both our Sentencing Code and related case law are instructive and helpful.

 Pennsylvania's Sentencing Code explains, in relevant part, that, as a general rule:

In imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not

**8.** The court noted that its task was to consider whether appellee's November 26, 2002 convictions "may serve as a basis for revoking ... probation." *Infante,* 850 A.2d at 698.

exceed the maximum term for which the defendant could be confined....

42 Pa.C.S. § 9754(a). The Code also mandates that a court imposing probation, "attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life." *Id.* § 9754(b). Subsection (c) gives the court discretion to impose, as a condition of probation, any of the enumerated requirements therein, as well as "any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." *Id.* § 9754(c)(13). Additionally, the Superior Court has recognized on numerous occasions that, "an implied condition of any sentence of probation is that the defendant will not commit a further offense." *Commonwealth v. Mallon,* 267 Pa.Super. 163, 406 A.2d 569, 571 (1979); *see also Commonwealth v. Martin,* 262 Pa.Super. 113, 396 A.2d 671, 674 n. 7 (1978); *Commonwealth v. Duff,* 201 Pa.Super. 387, 192 A.2d 258, 262 (1963), *rev'd on other grounds,* 414 Pa. 471, 200 A.2d 773 (1964).

The Code also speaks directly to the power of a sentencing court to modify or revoke probation, setting forth that a "court may at any time terminate continued supervision or lessen or increase the conditions upon which an order of probation has been imposed." 42 Pa.C.S. § 9771(a). The Code explains in more detail a sentencing court's power of revocation as follows:

> The court may revoke an order of probation upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.

*Id.* § 9771(b). Furthermore, the Code limits a revoking court's authority to resentence a probationer by stating that the court may not impose a sentence of total confinement unless one of three factors is present: "(1) the defendant has been convicted of another crime; or (2) the conduct of the

defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court." *Id.* § 9771(c). Finally, no modification or revocation may take place without a hearing, *id.* § 9771(d), which, according to our Rules of Criminal Procedure, must be held "as speedily as possible." Pa.R.Crim.P. 708(B)(1).

As Sections 9754 and 9771 make clear, the reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct. Rather, this Court has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated:

> A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct.

*Brown,* 469 A.2d at 1376 (citing *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701 (1973); and *Commonwealth v. Burrell,* 497 Pa. 367, 441 A.2d 744 (1982)). Furthermore, when the basis for revocation arises from the advent of intervening criminal conduct, a VOP hearing may be held prior to any trial arising from such criminal conduct. *See Kates,* 305 A.2d at 706–08 (no statutory or constitutional bar to holding VOP hearing prior to trial for criminal charges based on same activities which gave rise to alleged probation violation). On the other hand, this Court has recognized that "it is not unreasonable for a probation revocation hearing to be postponed pending adjudication of criminal charges which are the basis for the revocation." *Burrell,* 441 A.2d at 745–46 (may be "preferable" to defer hearing until after trial in order to avoid possibility of unjust revocation; such deferment does not violate right to speedy process). In any event, this Court has been specific that the "finding of a probation violation on the basis of a criminal conviction for an offense committed while on probation [is] **required** as a matter of law." *Id.* at 746–47

(citing *Mallon,* 267 Pa.Super. 163, 406 A.2d 569) (emphasis added).

In *Brown,* the defendant was convicted of robbery and conspiracy and sentenced to a term of imprisonment followed by probation. After his imprisonment ended, but during his probationary period, the defendant was arrested and charged with new robbery and conspiracy offenses. Immediately following that arrest, the Commonwealth requested that the VOP hearing be delayed until after the outcome of the defendant's criminal trial for the new offenses. Notwithstanding that the defendant was ultimately acquitted on the new offenses, his probation was revoked at the subsequent violation hearing and he was sentenced to a term of two to five years of imprisonment. The Superior Court affirmed. On further appeal to this Court, we noted our teaching in *Burrell* that it may be proper to defer the VOP hearing until after the outcome of the trial for new charges, as the trial court in *Brown* had done. However, we further noted that the rationale underlying deferral is to "avoid[ ] the possibly unjust result of revoking probation, only to find later that the probationer has been acquitted of the charges that prompted the revocation hearing." *Brown,* 469 A.2d at 1376 (quoting *Burrell,* 441 A.2d at 746). Accordingly, the *Brown* court reversed, holding as follows:

> It is obvious that the second bite of the apple which the Commonwealth seeks here is quite incompatible with our statement of purpose in sanctioning such a procedure. Moreover, [the language of *Burrell* ] reflects the clear assumption that **where there has been such a deferral the Commonwealth will be bound by the finding of the criminal trial.**

*Brown,* 469 A.2d at 1376 (emphasis added).[9]

Later, in *Royster,* this Court reaffirmed the holding in *Brown.* In *Royster,* the defendant was convicted on March

9. In *Brown,* the Commonwealth argued that, because the purposes of the criminal trial were distinct from those of the subsequent violation hearing, collateral estoppel should not apply to require the same result

27, 1974, of robbery, burglary, and two firearms offenses and sentenced to eleven and one-half to twenty-three months of imprisonment to be followed by three concurrent terms of five years of probation. On July 26, 1980, one month prior to the end of his probationary term, the defendant was arrested, charged with new offenses, and held over for trial on all charges. In June of 1981, the defendant was convicted on all charges, and the defendant filed post-verdict motions, which were deferred pending the preparation of a pre-sentence report. The original sentencing court then held a VOP hearing on September 9, 1981, found the defendant to be in violation of his probation by virtue of the intervening convictions, revoked his probation, and sentenced him to three concurrent terms of one to five years of imprisonment. However, on May 6, 1982, the trial court in the defendant's later criminal case granted his post-trial motions on double jeopardy grounds and arrested judgment on the convictions. Thereafter, the defendant filed a petition under the then Post Conviction Hearing Act ("PCHA"), 42 Pa.C.S. § 9541, *et seq.*, challenging his probation revocation, which the PCHA court denied. The Superior Court affirmed.

On appeal to this Court, we reversed and granted collateral relief. Relying strictly on our decision in *Brown*, we held as follows:

> We find ... that the sole basis the Commonwealth offered for [the defendant's] violation of probation was the fact that he had been convicted on June 26, 1981 of new charges. Because the trial court arrested judgment on the conviction, the Commonwealth cannot be found to have established by a preponderance of the evidence that [the defendant] committed the offense. Revocation of probation and re-sentencing

in each proceeding. This Court rejected that argument, finding any distinction to be irrelevant and concluding that:

> In both proceedings the sanction of loss of liberty is involved. Where, as here, the sole basis offered for the violation of probation is the commission of a subsequent offense, the threshold issue in both proceedings is exactly the same, i.e., did the probationer commit the offense.

*Brown*, 469 A.2d at 1376.

[the defendant] to a term of imprisonment was therefore improper.

*Royster*, 572 A.2d at 686.

The manner of sentencing that occurred in the instant case, of course, is notably distinct from the circumstances in either *Brown* or *Royster*, but those cases remain instructive concerning the flexibility required when open charges are pending in the VOP context. Here, at the October 29, 2002 VOP hearing, the sentencing court was aware of both appellee's intervening criminal charges and his technical violations. At that time, under Superior Court authority, the court clearly **could have** revoked appellee's probation and imposed a sentence of total confinement, based merely upon the fact that appellee had been arrested and charged with new crimes,[10] *see* 42 Pa.C.S. § 9771(c)(2), (3); *Commonwealth v. Sierra*, 752 A.2d 910, 911 (Pa.Super.2000) (parole and probation revoked and defendant sentenced to statutory maximum for technical violations), and, accordingly, could have imposed the maximum available sentence (with appropriate sentencing credit).[11] *See* 42 Pa.C.S. § 9771(b); *Commonwealth v. Ware*, 737 A.2d 251, 254 (Pa.Super.1999) (sentencing court empowered to impose statutory maximum upon revocation of probation). Instead, and in response to an argument forwarded by the defense, the court elected to proceed more cautiously, revoking appellee's probation on the basis of his technical violations and exercising leniency in re-sentencing appellee to a county term of confinement of eleven and one half to twenty-three months, rather than the statutory mandatory minimum, which appellee had already twice avoided.

Moreover, the record transcript clearly indicates that the court here, unlike the sentencing court in *Brown*, deliberately

10. Under additional Superior Court authority, *see Commonwealth v. Sims*, 770 A.2d 346 (Pa.Super.2001), a probationer, at his or her VOP hearing, can demand proof of the facts in support of the arrest upon which the violation is based. In this case, however, appellee never challenged the facts supporting his July 24, 2002 arrest at the October VOP hearing.

11. Appellee does not dispute that this option was available to the sentencing court at the October VOP hearing.

intended to withhold action on appellee's intervening criminal charges until **after** the outcome of the trial on those charges and specifically informed appellee of its intention. That course of action allowed the court to avoid the risk of entering a VOP sentence that would ultimately be void had appellee been acquitted of the new charges, as in *Brown,* 469 A.2d at 1376, or otherwise succeeded in avoiding conviction, as in *Royster,* 572 A.2d at 686. The trial court's course of action here, to which no party objected, arguably was consistent with this Court's stated preference for deferral of VOP sentencing until the final outcome of any new criminal charges. *Brown,* 469 A.2d at 1376; *Burrell,* 441 A.2d at 746. The court responded to appellee's argument concerning the open charges by giving him the benefit of the doubt, while making clear that the sentence was conditioned upon an assumption that the intervening criminal allegations would result in an acquittal.

Contrary to appellee's position, we see no reason why the court's election to show appellee leniency on October 29, 2002 should be construed, as a matter of law, to operate to tie its hands concerning a distinct, disclosed, and lawful pending but contingent basis for revocation and re-sentencing. Furthermore, we see no reason, under the facts of this case, to force the trial court's conduct into one or the other of the constructs alleged by appellee to have been improperly intertwined by the Commonwealth: *i.e.,* (1) the revocation of probation based upon "after-discovered" evidence; or (2) the imposition of "conditional" probation. We are satisfied, in light of our case law, that the salient point is that the ultimate disposition of outstanding criminal charges, which would require revocation if a conviction occurs, is a proper basis to adjust an existing VOP sentence—to the defendant's ultimate benefit or to his detriment.[12] *See Burrell,* 441 A.2d at 746–47; *Mallon,* 406 A.2d at 571. In short: not being convicted of an

12. In light of our jurisprudence, we find it unnecessary to determine whether the trial court's October 2002 order made it an "express" or "explicit" condition of appellee's probation that he not be convicted of the crimes in question. Certainly, the judge made it clear that the disposition of those charges, if unfavorable to appellee, would require adjustment to the VOP sentence.

intervening crime was at least a known and implied condition of appellee's October 2002 probation; and the intervening conviction warranted a revocation of that probation. Accordingly, we hold that the sentencing court did not lack authority on January 27, 2003 when it considered appellee's November 26, 2002 convictions in terminating his parole, revoking his probation, and imposing the mandatory minimum sentence that the General Assembly has fixed for his crimes. The Superior Court was in error to hold otherwise.[13]

The order of the Superior Court is reversed and the trial court's sentence is reinstated. Jurisdiction relinquished.

Justice NEWMAN and Justices EAKIN and BAER join the opinion.

Justice SAYLOR files a concurring opinion.

Chief Justice CAPPY files a dissenting opinion in which Justice NIGRO joins.

Justice SAYLOR, concurring.

I join the majority opinion, subject only to a reservation concerning the passage suggesting that the sentencing court could have revoked Appellee's probation and imposed a maximum sentence based on the mere fact of Appellee's having been arrested and charged with new crimes. *See* Majority Opinion, at 423–25, 888 A.2d at 793. In this regard, I tend toward the view that the fact of an arrest and new charges should not be deemed sufficient in and of itself to support revocation. *Accord Commonwealth v. Sims*, 770 A.2d 346, 352 (Pa.Super.2001); *see generally Johnson v. State*, 62 Md.App. 548, 490 A.2d 734, 736–37 (1985) (collecting cases).[1] I join the

13. As an aside, we note the Superior Court's emphasis on the import of case law from other jurisdictions afforded insufficient deference to this Court's decisional law, specifically, *Burrell*, 441 A.2d at 746–47, and *Brown*, 469 A.2d at 1376–77. *Contra State v. Ballensky*, 586 N.W.2d 163, 164 (N.D.1998); *Smith v. State*, 742 So.2d 1146, 1148 (Miss.1999); *Demchak v. State*, 351 So.2d 1053, 1054 (Fla.Dist.Ct.App.1977); *Bell v. State*, 656 S.W.2d 502, 505 (Tex.App.1982).

1. Indeed, a number of jurisdictions have couched revocation on such limited grounds as a due process violation. *See, e.g., State v. Kidwell*,

majority disposition not so much because I view the sentencing court's approach as an act of lenity,[2] but rather, because I find nothing in the governing statutory scheme to prevent the approach as an orderly manner of addressing multiple acts that are in violation of the terms governing a probationer's release.

Chief Justice CAPPY, dissenting.

The Majority endorses the decision of the trial court to "re-revoke" Appellee's probation based on what the Majority classifies as a contingency arising from the trial court's decision to treat Appellee with leniency regarding the possible outcome of pending criminal charges. (Majority opinion at p. 423–25, 888 A.2d 783, 793). As I cannot accept this depiction of the trial court's actions in this case and because I do not agree that the trial court has the option to "re-revoke" probation, I am compelled to dissent.

A finding of a probation violation is warranted when the evidence shows that probation is not an effective means of rehabilitation or deterrence of future antisocial conduct. *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701, 708 (1973). The focus at the violation hearing is on the conduct of the probationer. The resolution of any pending charges that might have prompted a violation hearing is not necessary to the issue of revocation. *Id.* at 711. In situations where a probationer faces a violation hearing because of new charges, the trial court has two options: to conduct the hearing before **or** after the new charges are resolved. *Kates*, at 709; *Commonwealth v. Burrell*, 497 Pa. 367, 441 A.2d 744, 745 (1982). What a trial court cannot do, however, is, as here, have it both ways.

1995 WL 68164 (Ohio App. Feb. 16, 1995); *Wright v. State*, 640 S.W.2d 265, 269 (Tex.Crim.App.1982).

**2.** In this regard, I also have difficulty with the majority's indication that the maximum sentence was imposable based on technical violations. While this may be true in the abstract, there are limits to the sentencing court's discretion, and, as applied to the circumstances of individual technical probation violations, it may be an abuse of discretion to impose a maximum sentence.

428

Probation is appropriate where the probationer and society can both benefit and inappropriate when the probationer reveals that his or her conduct has not reformed and society faces new threats from continued exposure to the probationer. That is why a trial court has the authority to revoke probation when the conduct of the probationer necessitates immediate action without the need to await resolution of pending charges. Those same considerations can, in other cases, justify waiting for resolution of new charges where the conduct of the probationer has not created a need for immediate action. There is no justification, nor authority, for a trial judge to "re-revoke" probation after a conviction stemming from conduct known to the trial court at the prior revocation hearing. To endorse the trial court's actions in this case would subject a probationary defendant to multiple revocations based upon the identical conduct.

Accordingly, I respectfully dissent.

Justice NIGRO joins this dissenting opinion.