**[J-60-2022] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 15 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered June 4, |
| | : | 2021 at No. 251 WDA 2020, |
| v. | : | reversing the revocation of |
| | : | probation and parole and vacating |
| | : | the Judgment of Sentence of the |
| CHRISTOPHER ALBERT KOGER, | : | Court of Common Pleas of |
| | : | Washington County entered |
| Appellee | : | January 22, 2020 at No. CP-63-CR- |
| | : | 0000233-2018 |
| | : | |
| | | ARGUED:  October 25, 2022 |

**CONCURRING OPINION**

**JUSTICE DONOHUE**                               **DECIDED: MAY 16, 2023**

I agree with the Majority's holding that *Commonwealth v. Foster*, 214 A.3d 1240 (Pa. 2019)—a decision involving the statutory limitations on a trial court's authority to revoke a probation order—does not apply in equal measure to parole. Majority Op. at 15 (stating the Superior Court's "extension of *Foster* and its attendant statutes to also cover parole revocations assumed too much"). Having answered the specific question before this Court regarding *Foster*'s limited scope, I respectfully submit that no more was necessary. Nevertheless, the Majority also proclaims that, in county-parole cases, 42 Pa.C.S. § 9776(d) delegates to county probation officers "the authority to impose parole conditions in addition to the trial court[.]" Majority Op. at 14 (hereinafter "the Delegation Issue"). Regardless of one's agreement with that proposition, it answers a question that

is not before this Court. In any event, I disagree with the Majority that Section 9776(d) authorizes the delegation of the trial court's responsibly to impose parole conditions. It says no such thing.

### *Foster*

In *Foster,* this Court held that the clear and unambiguous language of the prior version of 42 Pa.C.S. § 9754[1] required that "an order of probation must specify the length of the term thereof at the time of sentencing." *Foster*, 214 A.3d at 1248-49 (citing 42 Pa.C.S. § 9754(a)). That version of Section 9754 also provided a general condition of probation that a defendant "lead 'a law-abiding life,' i.e., that the defendant refrain from committing another crime." *Id.* at 1250 (quoting 42 Pa.C.S. § 9754(b)). In furtherance of that general condition, the statute required "the sentencing court to attach" to the probation order "any 'reasonable conditions authorized by subsection (c)[']" of Section 9754. *Id.* at 1249 (quoting 42 Pa.C.S. § 9754(b)). Section 9754(c) provided a non-exhaustive list of conditions that the sentencing court could impose.

The trial court determined that Foster violated his probation by appearing in social media posts while handling contraband. *Foster*, 214 A.3d at 1243. However, the court "did not find that Foster had violated a condition of his probation – in fact, [it] never mentioned the conditions of his probation in reaching its decision, and no order of probation appear[ed] in the certified record on appeal." *Id.* at 1244. The Superior Court affirmed, relying on this Court's statement in *Commonwealth v. Infante*, 888 A.2d 783 (Pa.

---

[1] The General Assembly amended Section 9754, effective on December 18, 2019, four months after we decided *Foster*. The revocations of Koger's parole and probation occurred under the prior statutory regime. Accordingly, from this point forward, all citations to Section 9754 refer to the pre-amendment version of the statute.

2005), that a "probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." *Infante*, 888 A.2d at 791 (internal citations omitted). We reversed the Superior Court, holding that both the trial court and the Superior Court had "disregarded **the statutory requirement** that a court must first find that the defendant either committed a new crime or violated a specific condition of probation in order to be found in violation." *Foster*, 214 A.3d at 1251 (emphasis added).

### Koger's Probation and Parole Violations

On August 21, 2018, Koger pled guilty to one count each of child pornography, 18 Pa.C.S. § 6312(d) (count 1), and criminal use of a communication facility, 18 Pa.C.S. § 7512 (count 2); the trial court sentenced him at count 1 to eight to twenty-three months of incarceration and at count 2 to a term of three years of probation to run consecutive to the sentence imposed at count 1. The court then immediately paroled Koger based on credit for time served. Both his parole and probation were ordered to be supervised by the Washington County Adult Probation Office ("County Probation Office"). Two months later, the County Probation Office filed a petition alleging that Koger violated the terms of his probation and parole, and the parties proceeded by stipulating to those violations. The trial court revoked Koger's probation and parole, remanded Koger to county jail at count 1, and reinstated his three-year probation term at count 2. The trial court later re-paroled Koger at count 1 on June 21, 2019.

Only three months later, the County Probation Office filed a second petition alleging three technical violations and one substantive violation of Koger's probation and

parole. Petition for the Revocation of Parole and Probation, 9/17/2019, at 2 ("Revocation Petition"). At the conclusion of a hearing held on November 4, 2019 ("Revocation Hearing"), the trial court determined that Koger had "violated his parole and probation by committing technical violations and, accordingly, revoked his parole and probation." Trial Court Opinion, 5/26/2020, at 4. At the sentencing hearing held on January 22, 2020, the trial court remanded Koger to county jail to serve the balance of his sentence at count 1, and resentenced him at count 2 to one to three years of incarceration, consecutive to his sentence imposed at count 1.

## Superior Court

In his timely appeal to the Superior Court, Koger presented three questions for review. Koger's Superior Court Brief, at 6. He claimed there was insufficient evidence to revoke his parole at count 1, insufficient evidence to revoke his probation at count 2, and he also tendered an illegal-sentencing claim. *Id.* Regarding the first claim, Koger argued that the Commonwealth failed to present sufficient "evidence to show that [he] violated a term or condition of his parole" because "the Commonwealth did not establish what the actual conditions of [his] parole were." *Id.* at 19, 20. Similarly, Koger argued that the Commonwealth failed to present sufficient evidence that he had "violated a specific term or condition of his probation" because "the Commonwealth did not establish at the Revocation Hearing what the actual conditions of [his] probation were." *Id.* at 23, 24. Koger's illegal-sentencing issue echoed his sufficiency claims; he asserted that, because the evidence was insufficient to show that he had "violated a specific term or condition of probation or parole or committed a new offense[,]" the trial court "lacked the legal authority to enter" the January 22, 2020 order of sentence. *Id.* at 28, 29.

Notably, Koger only cited *Foster* in support of his sufficiency claim concerning the revocation of his probation. *Id.* at 23-24. Nevertheless, the Superior Court addressed Koger's two sufficiency claims together and applied *Foster*'s rationale to both. *Commonwealth v. Koger*, 255 A.3d 1285, 1290 (Pa. Super. 2021), *reargument denied* (Aug. 10, 2021), *appeal granted*, 276 A.3d 202 (Pa. 2022) ("Under these circumstances, we conclude the trial court erred in failing to specifically advise Appellant of the conditions of his probation and parole at the time of his initial sentencing. *See* 42 Pa.C.S. § 9754(b); *Foster*, 214 A.3d at 1244 n.5."). Consequently, the Superior Court reversed "the revocation of [Koger's] probation and parole" and vacated his judgment of sentence. *Id.* at 1291.[2]

The Commonwealth timely filed a petition for allowance of appeal, asking this Court to answer two questions. First, the Commonwealth presented the question: "Did the Superior Court err in expanding this Court's holding in … *Foster* and the statutory requirements related to probation conditions under 42 Pa.C.S.[] § 9754 to not only probation but also parole cases?" Commonwealth's Petition for Allowance of Appeal ("Petition"), 9/8/2021, at 5. We granted review of the question "as stated by" the Commonwealth. *Commonwealth v. Koger*, 276 A.3d 202 (Pa. 2022) (per curiam) ("Allocatur Order"). Second, the Commonwealth asked this Court to review whether "the Superior Court err[ed] in failing to provide guidance to the trial and sentencing courts, as

---

[2] The Superior Court also ostensibly determined that Koger's judgment of sentence was illegal, but its ruling on the issue was somewhat ambiguous as it merely repeated its conclusion that the evidence was insufficient to support the revocations, again citing *Foster* and Section 9754(b). *Id.* ("Because the trial court did not impose the conditions which [Koger] is alleged to have violated, the Commonwealth could not prove by a preponderance of the evidence that [he] committed any violations as allegedly defined in the [Revocation Petition].").

well as probationers and parolees, as to how the conditions must be communicated?" Petition at 5. We denied review of the Commonwealth's second question.

<u>Analysis</u>

The Majority correctly concludes that Section 9754 does not require the trial court to issue conditions of parole at the time of sentencing. Majority Op. at 13. Consequently, *Foster* does not impose such a requirement, because *Foster*'s rationale was squarely grounded in the text of Section 9754. *See Foster*, 214 A.3d at 1250 (stating "a court may find a defendant in violation of probation only if the defendant has violated one of the 'specific conditions' of probation included in the probation order or has committed a new crime. The plain language of the statute does not allow for any other result"). At that point, the Majority fully resolves the question before this Court.

The Majority nevertheless plows forward to address the Delegation Issue despite the fact that it was not accepted for our review, never briefed by the parties, and never discussed in the lower courts. The Majority asks itself, sua sponte: Under what authority does a trial court delegate its power to set parole conditions in county-parole cases? This is an interesting question, worthy of consideration after proper cultivation, but the Majority prematurely harvests an unsatisfactory answer, concluding that, in directing courts to place parolees "in the charge of" a county probation officer, Section 9776(d) authorizes a trial court to delegate its power to set the conditions of parole.

The trial court neither imposed nor communicated Koger's parole conditions to him in accordance with "long standing procedures in Washington County." Trial Court Letter, 5/7/2021, at 1. The Majority acknowledges that the "Commonwealth never produced or admitted into evidence the rules provided to and signed by [Koger] following sentencing,

so they are not in the certified record. It is thus unclear whether the 'conditions' [set forth in the Revocation Petition] are verbatim reproductions of the rules or summaries thereof." Majority Op. at 4 n.4. Not to be deterred by this information deficit, the Majority assures us that Probation Officer Jeremy Bardo ("PO Bardo"), who filed the Revocation Petition without attaching a copy of the parole conditions purportedly communicated to and signed by Koger, and who further neglected to produce the same at the Revocation Hearing, nevertheless "credibly" testified that Koger both received and signed a copy of those conditions. *Id.* at 7. The Commonwealth did not ask PO Bardo, nor did PO Bardo volunteer to divulge, whether he had personally witnessed Koger's receipt and/or signing of the parole conditions imposed, nor when (nor where, nor how) this off-the-record ritual occurred.

These are certainly matters of interest that may come into play in the Superior Court's consideration on remand of Koger's unanswered parole-related sufficiency claim. And, regardless of how the Superior Court resolves that claim, it should cause at least some concern that parole conditions are not routinely made part of the record at the earliest possible time following parole, if only to minimize confusion and thereby maximize fairness in the process of revocation should parolees transgress those conditions. That this is not already the case already must be due, in no small part, to the fact that trial courts routinely delegate their authority to impose parole conditions to county probation officers. Thus, I share the Majority's curiosity as to how it came to pass that trial courts delegate this power to probation officers in county-parole cases.

But that Delegation Issue is simply not yet before this Court. So why are we addressing it? The Majority approaches this Delegation Issue after lamenting that Koger

"has not directed us to, and we have been unable to find, any statutory limitations within the Sentencing Code regarding who may impose parole conditions, the permissible conditions that may be imposed, or the time for imposing them." *Id.* at 14. It befuddles me why the Majority believes Koger, the appellee before this Court, had any responsibility to bring such authorities to this Court's attention, much less address an issue over which this Court did not grant review.

The Commonwealth never raised the Delegation Issue as a subsidiary argument to its *Foster* issue.[3] The Majority instead relies on the language of our Allocatur Order itself, which asked if "the Superior Court err[ed] in expanding this Court's holding in" *Foster*. *Commonwealth v. Koger*, 276 A.3d 202 (Pa. 2022) (per curiam). The Majority declares that the Delegation Issue is obviously subsumed within that question, citing the principle that a question presented for our review "will be deemed to include every subsidiary question fairly comprised therein[,]" but omits the corollary rule that only "the questions set forth in the petition, or fairly comprised therein, will ordinarily be considered by the court in the event an appeal is allowed." Pa.R.A.P. 1115(a). In my view, that question is **obviously not subsumed** within our allocatur grant.[4] Rule 1115 demands

---

[3] I observe only one solitary reference to Section 9776 in the Commonwealth's Brief, offered solely for the proposition that the "Sentencing Code gives parole authority for county sentences … to the sentencing judge." Commonwealth's Brief at 20 (citing 42 Pa.C.S. § 9776(a)). This boilerplate statement of the law was never in dispute. The Commonwealth never mentioned, much less discussed, Section 9776(d)'s language directing trial courts to "place" paroled inmates "in the charge of and under the supervision of a designated probation officer." 42 Pa.C.S. § 9776(d).

[4] Here, the Majority undoubtably raises the Delegation Issue sua sponte. To the extent the Majority believes that the Commonwealth attempted to raise concerns about the Delegation Issue in its petition for allowance of appeal, the Commonwealth at best did so vaguely and without any reference to the Section 9776(d) rationale now adopted by the Majority. *See* Petition for Allowance of Appeal at 12 ("This appeal should be granted to

that we do not address the issue, because: 1) the Delegation Issue was not explicitly set forth in the text of the Allocatur Order; 2) it was not raised or argued by any party at any prior stage; 3) it did not form the basis of any ruling in the lower courts; 4) it does not directly resolve the question of whether the Superior Court erred in this case by misapplying *Foster*; and 5) it does not otherwise aid the Majority in resolving the *Foster* issue.[5]  For these reasons, I ascertain no essential connection between the question granted for review and the Delegation Issue.

---

reaffirm this Court's supervisory authority over the lower courts, to reaffirm the holding of *Foster* and § 9754 and its application only to probation, and to remedy the conflict of the Superior Court's opinion with this Court's holding in *Foster* and with the duly enacted statutes.").  Nothing in the Commonwealth's petition stated or implied a conflict with Section 9776(d) as a basis for the Superior Court's error, nor does the Commonwealth assert such a conflict in is brief.  Moreover, the statutes governing parole supervision referenced by the Commonwealth in its petition had nothing to do with the Delegation Issue at all, but instead concerned unrelated powers of probation officers generally and the power of the state Parole Board to issue parole conditions.  *See* Petition for Allowance of Appeal at 9 (citing 42 Pa. C.S. §§ 9911 (definitions), 9912 (governing searches and seizure by probation officers), and 61 Pa.C.S. § 6141 (permitting the state Parole Board to issue "general rules for the conduct and supervision of offenders and" to "prescribe special regulations for particular persons" in state parole cases)).  Sections 9911 and 9912 simply have no relationship to the Delegation Issue at all, and the Majority rightly rejects the Commonwealth's arguments related to Section 6141 elsewhere in its opinion, correctly stating that the state Parole Board had no authority in this county-parole case.  *See* Majority Opinion at 18.

[5]  This Court has a long-standing policy against appellate courts raising issues sua sponte because it "unnecessarily disturb[s] the processes of orderly judicial decisionmaking" and "deprives counsel of the opportunity to brief and argue the issues and the court of the benefit of counsel's advocacy."  *Wiegand v. Wiegand*, 337 A.2d 256, 257 (Pa. 1975).  In a recent unanimous decision, this Court reiterated:

> An appellate court must address an appeal as it is filed and generally may not raise an issue sua sponte.  An appellate court can only pass upon the legal question involved in any case which comes before it.  We have held on numerous occasions that where the parties fail to preserve an issue for

Nevertheless, the Majority answers a question it was never asked, and so I am compelled to address its answer. The Majority divines a solution to the Delegation Issue from its reading of Section 9776(d). Section 9776 governs the judicial power to release inmates: In cases that do not involve the exclusive parole jurisdiction of the Pennsylvania Parole Board,[6] i.e., county-parole cases, "a court of this Commonwealth or other court of record having jurisdiction may, after due hearing, release on parole an inmate in the county correctional institution of that judicial district." 42 Pa.C.S. § 9776(a). "No inmate may be paroled" under Section 9776 "except on petition verified by the oath of the inmate or by the inmate's representative and presented and filed in the court in which the inmate was convicted." *Id.* § 9776(b). Once a petition is filed, the court is obligated to schedule a hearing, and a "copy of the petition shall be served on the district attorney and prosecutor in the case at least ten days before the day fixed for the hearing." *Id.* § 9776(c). Following the hearing, the court must issue an order "as it may deem just and proper." *Id.* § 9776(d). Critically for our purposes here, if the court grants parole, "it shall place the inmate in the charge of and under the supervision of a designated probation officer." *Id.* Finally, upon "cause shown by the probation officer that the [parolee] has violated his parole," the court may either recommit the parolee for the violation or reparole him if the court finds a "reasonable probability" that he will benefit from parole. *Id.* § 9776(e).

---

appeal, an appellate court may not address the issue, even if the disposition of the trial court was fundamentally wrong.

*Gibraltar Rock, Inc. v. Dep't of Env't Prot.*, 286 A.3d 713, 724 (Pa. 2022) (internal citations, brackets, ellipses, footnotes, and quotation marks omitted).

[6] Section 9776 was subjected to a minor amendment in 2021, recasting the "Pennsylvania Parole Board of Probation and Parole" as the "Pennsylvania Parole Board." No other changes in the text of the statute occurred.

Ostensibly uncomfortable with the absence of explicit authority permitting a trial court to delegate its power to issue parole conditions, the Majority attempts to mine Section 9776(d) to validate the belief that such authority **must** exist. The Majority's "discovery" of such authority in Section 9776(d) is coated with a veneer of statutory construction that camouflages an underlying truth: Nothing in Section 9776, and nothing in Section 9776(d) in particular, speaks to the power to issue **conditions** of parole. Indeed, nothing in Section 9776 explicitly addresses parole conditions at all.

Nevertheless, the Majority dissects Section 9776(d)'s text, highlighting that when a court "paroles the inmate, it shall place the inmate **in the charge of** and **under the supervision of** a designated probation officer." 42 Pa.C.S. § 9776(d) (emphasis added). The Majority correctly casts aside the notion that the sequential use of the terms "in the charge of" and "under the supervision of" in Section 9776(d) is a redundancy, which might be the first impression of an unsophisticated reader.[7] From this unremarkable platform, the Majority jumps to conclude that the phrase "in the charge of" must, therefore, add to that supervisory power "the authority to impose parole conditions[.]" Majority Op. at 14. Why? Yet again, we are assured that it is "obvious." *Id.*

It is not obvious. By its plain terms, Section 9776(d) says no such thing. I do not pretend to know with certainty what "in the charge of" means beyond the power to supervise, even if I agree with the Majority that the phrase cannot, by our canons of statutory construction, mean exactly the same thing as "under the supervision of." *See* 1

---

[7] While this component of the Majority's statutory construction rationale is technically correct, it must be noted that the Majority effectively declares victory against a redundancy strawman, given that no party has asked this Court to interpret the meaning of Section 9776(d) in such a fashion and there is no interpretation by a prior court identified by the Majority suggesting that those terms are identical in meaning.

Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). However, it does not follow that "in the charge of" must mean that a designated probation officer has independent "authority to impose parole conditions" merely because those phrases must be afforded different meanings.[8] The Majority's inability to uncover any other authority to support its view that a trial court may delegate its power to issue parole conditions is no reason to find such authority in Section 9776(d).

Section 9776 simply does not discuss parole conditions at all, and there can be no doubt that when the Legislature intended to delegate the power to issue parole conditions, it said so in clear and unambiguous terms. In 2021, the Legislature granted the Pennsylvania Parole Board "exclusive power" in state parole cases to "establish special **conditions of supervision** for paroled offenders" and to "promulgate regulations

---

[8] In the instant case, upon initially paroling Koger, the trial court ordered him to be "supervised" by the County Probation Office; the court did not designate a probation officer in its order. Order of Sentence, 8/21/2018, at 2. In the December 21, 2018 order revoking Koger's initial parole, wherein the trial court ordered Koger to be reparoled on June 21, 2019, the court did not designate any supervising authority. Order, 12/21/2018, at 1-2. As interpreted by the Majority, "a designated probation officer" is authorized to impose conditions of parole. There is no evidence that the trial court designated a probation officer in this case. In any event, in "ascertaining the intention of the General Assembly in the enactment of a statute[,]" we presume that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). It is absurd and/or unreasonable to believe that the General Assembly intended to place such broad authority to set parole conditions in the hands of one individual, if it intended to delegate such power at all. Indeed, the absurdity of the Majority's interpretation is even more evident when applied to the preceding language in Section 9776(d), which mandates that the trial court "**shall** place the inmate in the charge of … a designated probation officer[,]" which would suggest not only that the trial court **may** delegate its authority to set parole conditions to a parole officer, but that it **must** do so. 42 Pa.C.S. § 9776(d) (emphasis added). The General Assembly could not have intended to accomplish so much by saying so little, depriving the court of the authority to set conditions of parole while simultaneously delegating such authority to the arbitrary discretion of an individual probation officer.

establishing general **conditions of supervision** applicable to every paroled offender."

61 Pa.C.S. § 6132(a)(3)-(4) (emphasis added).[9] The General Assembly did not delegate the power to impose parole conditions to the Pennsylvania Parole Board by directing trial courts to place state-sentence parolees "in the charge of" the Pennsylvania Parole Board or its officers. It simply used the common sense, ordinary terms one would expect the Legislature to use, terms glaringly absent from the text of Section 9776(d). As such, in my view, Section 9776(d) means something other than the Majority's interpretation. Some advocacy would surely help.

Consequently, I join the Majority but for its incorrect, sua sponte interpretation of Section 9776(d).

---

[9] Section 9776(d) predated the 2021 amendment.