J-S02011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HASSAN WILCOX | : | |
| | : | |
| Appellant | : | No. 1121 EDA 2020 |

Appeal from the Judgment of Sentence Entered March 6, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002206-2016

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:                 **FILED:  APRIL 16, 2021**

Appellant, Hassan Wilcox, appeals from the judgment of sentence of an aggregate term of 2-4 years' incarceration, followed by one year of probation, imposed after the trial court revoked his probation.[1]  We affirm.

We need not set forth the relevant facts and procedural history of this case here, as the trial court provided an adequate summary of both in its November 16, 2020 opinion pursuant to Pa.R.A.P. 1925(a).  **See** Trial Court Opinion (TCO), 11/16/20, at 1-5.  Presently, Appellant raises two issues for our review:

1. Whether the evidence introduced at the probation revocation hearing was insufficient to establish a technical violation by a preponderance of the evidence.

2. Whether the lower court abused its discretion by imposing a concurrent sentence of two to four years['] state

_____

[1] We note that Appellant also goes by the name Andre Montgomery.

incarceration[,] plus one year [of] probation[,] on the counts of insurance fraud and conspiracy, a manifestly excessive violation[-]of[-]probation sentence for a technical violation of probation.

Appellant's Brief at 5 (unnecessary capitalization and emphasis omitted).

In Appellant's first issue, he argues that "[t]he evidence introduced at the probation revocation hearing was insufficient to establish a technical violation by a preponderance of the evidence." *Id.* at 11 (unnecessary capitalization and emphasis omitted). He says that his "actions have not shown that probation has been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct[.]" *Id.* at 12. He asks us to reverse the revocation, contending that the evidence, specifically relating to the incident where he took personal items from a woman he had been driving in a hack/taxi, "is so tenuous as to connect [him] with criminal activity." *Id.* at 13; *see also id.* at 12 ("Where a probation revocation is based on evidence that 'so tenuously' connects an appellant to criminal activity, a probation revocation is 'not predicated upon evidence of sufficient probative value' and must be vacated.") (quoting ***Commonwealth v. Griggs***, 461 A.2d 221, 224 (Pa. Super. 1983)).

No relief is due on this basis. We have reviewed the thorough and well-reasoned opinion issued by the Honorable Anne Marie B. Coyle of the Court of Common Pleas of Philadelphia County. We conclude that Judge Coyle's opinion accurately and thoroughly disposes of the sufficiency claim raised by Appellant. TCO at 5-14. Accordingly, we adopt her opinion as our own with respect to this issue.

- 2 -

In Appellant's second issue, he asserts that the trial court "abused its discretion by imposing an excessive sentence on a technical violation of probation that did not take into sufficient consideration [his] rehabilitative needs." Appellant's Brief at 15 (emphasis omitted). He says that "[d]rug and [a]lcohol treatment, anger management classes, job training[,] and house arrest would have served the rehabilitative needs of Appellant and protected the community." *Id.* at 17. He also avers that the sentence imposed constituted "too severe a punishment. … There was no consideration of [A]ppellant['s] having potential employment at the airport. There was no consideration of [Appellant's] being referred to the rehabilitative services of the probation department … for drug treatment, employment[,] and anger management." *Id.* at 14-15.

Appellant's claim implicates the discretionary aspects of his sentence. *See Commonwealth v. Ahmad*, 961 A.2d 884, 886 (Pa. Super. 2008) ("A challenge to an alleged excessive sentence is a challenge to the discretionary aspects of a sentence.") (citation omitted). However, before reaching the merits of this issue, we must determine if Appellant has preserved it for our review. "Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." *Id.* (citations omitted). Here, Appellant only stated in his post-sentence motion that "[t]he sentence was excessive[,]" and provided no further elaboration. *See* Post-Sentence Motion,

- 3 -

3/13/20, at ¶ 11. He also does not contend that he presented this specific claim at sentencing. As the Commonwealth aptly discerns,

> [Appellant's] sentencing claim is waived[] because it was never presented to the [trial] court. There, he argued in his motion to reconsider only that the sentence was somehow "excessive," without further explanation. His argument now — that supposedly "[t]here was no consideration of [Appellant's] having potential employment at the airport. There was no consideration of [Appellant's] being referred to the rehabilitative services of the probation department[,] such as referrals for drug treatment, employment[,] and anger management" — is raised for the first time on appeal. It is therefore waived.

Commonwealth's Brief at 8 (internal citations omitted).[2] We agree.

Nevertheless, even if not waived, we would ascertain no abuse of discretion by the trial court in sentencing Appellant.

When reviewing sentencing matters, it is well-settled that:

> [W]e must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. An appellate court will not disturb the lower court[']s judgment absent a manifest abuse of discretion. In order to constitute an abuse of discretion, a sentence must either exceed the statutory limits or be so manifestly excessive as to constitute an abuse of discretion. Further, a sentence should not be disturbed where it is evident that the sentencing court was aware of sentencing considerations and weighed the considerations in a meaningful fashion.
>
> Through the Sentencing Code, the General Assembly has enacted a process by which defendants are to be sentenced. As a threshold matter, a sentencing court may select one or more options with regard to determining the appropriate sentence to be

_____

[2] We also note that Appellant similarly made the bald allegation that his "sentence was excessive" in his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. *See* Rule 1925(b) Statement, 4/12/20, at ¶ 2.

- 4 -

imposed upon a defendant. These options include probation, guilt without further penalty, partial confinement, and total confinement. In making this selection, the Sentencing Code offers general standards with respect to the imposition of sentence which require the sentence to be consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. Thus, sentencing is individualized; yet, the statute is clear that the court must also consider the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing.

In considering an appeal from a sentence imposed following the revocation of probation, [o]ur review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion.

It is the law of this Commonwealth that once probation has been revoked, a sentence of total confinement may be imposed if any of the following conditions exist in accordance with Section 9771(c) of the Sentencing Code:

> (1) the defendant has been convicted of another crime; or
>
> (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or
>
> (3) such a sentence is essential to vindicate the authority of the court.

42 Pa.[C.S.] § 9771(C).

The Commonwealth establishes a probation violation meriting revocation when it shows, by a preponderance of the evidence, that the probationer's conduct violated the terms and conditions of his probation, and that probation has proven an ineffective rehabilitation tool incapable of deterring probationer from future antisocial conduct. [I]t is only when it becomes apparent that the probationary order is not serving this desired end [of

rehabilitation] the court's discretion to impose a more appropriate sanction should not be fettered.

***Ahmad***, 961 A.2d at 887-89 (most internal citations and quotation marks omitted; some brackets added).

Judge Coyle cogently stated the rationale for the sentence she imposed. It is apparent that she was mindful of the above-stated sentencing considerations and weighed them carefully in sentencing Appellant. ***See*** TCO at 14-18. She determined that "Appellant had amply established that probation had been a futile rehabilitative vehicle. Zero deterrence of his anti-social and criminal conduct had resulted." ***Id.*** at 16. She also stated that she "had thoroughly considered Appellant's family and community ties, as well as his rehabilitative needs when determining an appropriate sentence." ***Id.*** Accordingly, even if Appellant's sentencing argument was properly preserved, we would have no reason to disturb Judge Coyle's sentence. Consequently, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Kunselman joins this memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/16/21

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION - CRIMINAL SECTION**

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0002206- 2016
         :
         :
         :
         :
v.          :
         :
         :
         :     **SUPERIOR COURT**
HASSAN WILCOX          :     **NO. 1121 EDA 2020**

(A.K.A. ANDRE MONTGOMERY)

**FILED**

**OPINION**

NOV 1 6 2020

Office of Judicial Records
Appeals/Post Trial

COYLE, J.                     **NOVEMBER 16, 2020**

Appellant, Hassan Wilcox, as the above-named Defendant, by and through his appellate counsel, seeks review of the Order of Sentence entered March 6, 2020, by the Honorable Anne Marie B. Coyle, Judge of the Court of Common Pleas for the First Judicial District of Pennsylvania, hereinafter referred to as "this Court." Appellant claimed that the Court had erred in finding Appellant in violation of probation by a preponderance of the evidence and that the resulting aggregate sentence of two (2) years to four (4) years of state supervised confinement followed by one (1) year of probation, which had been entered following the revocation of probation supervision, had been excessive. A fair review of the transcribed record reflected that Appellant's claims lacked factual and legal merit.

1

## I. FACTS AND PROCEDURAL HISTORY

On March 3, 2017, Appellant, Hassan Wilcox, reportedly born as Andre Montgomery, entered a negotiated guilty plea to Insurance Fraud, Intent to Defraud[1] and Conspiracy[2], both downgraded as misdemeanors of the first degree and was immediately sentenced to the agreed upon concurrent term of five (5) years of reporting probation. All other charges, including the felony offenses, were dropped by the prosecution.

Before accepting the negotiated guilty plea, this Court had duly conducted a verbal and written colloquy to insure Appellant's knowledge and voluntariness. To promote rehabilitation and prevent recidivism, particularly in view of Appellant's reported drug and alcohol addictions and criminal history, this Court ordered Appellant to comply with all recommended drug and alcohol treatments; submit to random drug and alcohol screening; submit to random home and vehicle checks for drugs and weapons; and to refrain from involvement with any associated person involved in the drug trade. Appellant was directed to seek and maintain legitimate employment and pay fines and costs.

Critically given Appellant's previous history, the Order of Sentence specifically prohibited Appellant from having any contact with any illegal narcotics or weapons. Appellant was explicitly directed not to reside in any household where firearms or illegal narcotics were located. At the very least, Appellant was instructed to report to the probation department and comply with the rules and

---

[1] 18 Pa. C.S.A. § 4117 §§ B4

[2] 18 Pa. C.S.A. § 903

2

regulations set forth by the supervising Philadelphia Parole and Probation Department. He was duly advised as to the potential consequences of non-compliance. No appeal was taken.

The GAGNON reports that had been prepared by the assigned probation officers reflected that while under this Court's supervision, Appellant had routinely missed his probation appointments, failed to pay his fines and costs, remained unemployed, and became verbally combative and abusive towards his probation officers and engaged in illegal ingestion of marijuana. On or about August 30, 2019, Appellant was arrested and was charged with Robbery, Theft by Unlawful Taking, Receiving Stolen Property, Simple Assault, and Recklessly Endangering Another Person (MC-51-CR-0024626-2019).[3] He had also been arrested in Delaware County for driving with a suspended license on or about May 16, 2019.

On or about September 17, 2019, this Court was notified of Appellant's potential technical and direct probations violations. Pending disposition of his open matters, and the appointment of new counsel, Appellant's violation-of-probation hearing was regularly continued per defense request from September 24, 2019 through January 10, 2020.

Following hearing held on January 10, 2020, Appellant was determined to be in technical violation of probation at the very least due to testing positive for controlled substances and repeatedly failing to report as directed to the probation department. Disposition and sentencing was deferred pending the completion of a pre-sentence report, a mental health evaluation, and a forensic intensive rehabilitative or "FIR" drug and alcohol evaluation. Appellant was permitted to remain out of county custody pending evaluations and was assigned to house arrest with electronic monitoring.

---

[3] This matter was dismissed for lack of prosecution on December 16, 2019.

3

He was directed to surrender to the house arrest program upon inspection and acceptance of his household and compliance with all relevant conditions on January 28, 2020. As part of this process Appellant had signed the house arrest authorization forms that once again acknowledged prohibition of access to firearms or illegal narcotics particularly within his residence.

In the interim, when the House Arrest Unit investigators had arrived to set up the equipment for monitoring, it was discovered that Appellant's, maternal aunt, with whom he had been residing, while under probation, had continually possessed a firearm in that home. Appellant's maternal aunt had been an employee of the District Attorney's Office of Philadelphia and had announced her position when she had telephoned the assigned probation officer to complain about the custodial removal of Appellant, known to her as her sister's son Andre Montgomery. This admitted fact had constituted a flagrant violation of the conditions of probation.

Given the demonstrated conflict of interest, this case was referred to and accepted for prosecution by the Commonwealth of Pennsylvania Office of Attorney General. Following an additional evidentiary hearing held on March 6, 2020, revocation was deemed due. On that same day after further hearing and upon thorough review of all sentencing factors, Appellant was sentenced to concurrent terms of two (2) years to four (4) years of incarceration followed by one (1) year of reporting probation allocated to each charge. All previously recommended rehabilitative conditions were again imposed. Appellant filed a *Motion to Reconsider Finding of Violation of Probation*, which was subsequently denied. A timely Notice of Appeal was filed. A Statement of Matters Complained of on Appeal was filed on or about April 13, 2020.

## II.    ISSUES ON APPEAL

The Statement of Errors recited the following claims verbatim on appeal:

      1.     Counsel intends to raise a claim that it was error to find defendant in violation of probation by a preponderance of the evidence.

      2.     The sentence was excessive.

## III.   DISCUSSION

The scope of review in an appeal following a sentence imposed after probation revocation is limited to the validity of the revocation proceedings and the legality of the sentence imposed following revocation. Commonwealth v. Infante, 585 Pa. 408, 419, 888 A.2d 783, 790 (2005). In this Commonwealth, the trial court's authority to impose a term of probation has been set forth in the following manner: Whenever any person shall be found guilty of any criminal offense by verdict of a jury, plea, or otherwise, except murder in the first degree, in any court of this Commonwealth, the court shall have the power, in its discretion, if it believes the character of the person and the circumstances of the case to be such that he is not likely again to engage in a course of criminal conduct and that the public good does not demand or require the imposition of a sentence of imprisonment, instead of imposing such sentence, to place the person on probation for such definite period as the court shall direct, not exceeding the maximum period of imprisonment allowed by law for the offense for which such sentence might be imposed. 61 P.S. § 331.25.

Pennsylvania Rule of Criminal Procedure Rule 1409 further provides: Whenever a defendant has been placed on probation or parole, the judge shall not revoke such probation or parole as allowed by law unless there has been a hearing held as speedily as possible at which Appellant is present and represented by counsel and there has been a finding of record that the defendant violated a condition of probation or parole . . . . *See* Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36

L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972);

Commonwealth ex rel. Rambeau v. Rundle, 455 Pa. 8, 314 A.2d 842 (1973); Commonwealth v.

Davis, 234 Pa. Super. 31, 336 A.2d 616 (1975).

When imposing a sentence of total confinement after a probation revocation, the sentencing

court is to consider the factors set forth in 42 Pa.C.S. § 9771.[4] Commonwealth v. Ferguson, 2006

PA Super 18, 893 A.2d 735, 737 (Pa. Super. 2006). Under 42 Pa.C.S. § 9771(c), a court may

sentence a defendant to total confinement subsequent to revocation of probation if any of the

following conditions exist: (1) the defendant has been convicted of another crime; or (2) the conduct

of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned;

or (3) such a sentence is essential to vindicate the authority of the court. *See also* Commonwealth v.

Coolbaugh, 2001 PA Super 77, 770 A.2d 788 (Pa. Super. 2001).

Our appellate courts have repeatedly acknowledged the very broad standard that sentencing

---

[4] § 9771. Modification or revocation of order of probation

(a) General rule. -- The court may at any time terminate continued supervision or lessen or increase the conditions upon which an order of probation has been imposed.

(b) Revocation. -- The court may revoke an order of probation upon proof of the violation of specified conditions of the probation. *Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.* [emphasis added.]

(c) Limitation on sentence of total confinement. -- The court shall not impose a sentence of total confinement upon revocation unless it finds that:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

    *         *         *         *

1974, Dec. 30, P.L. 1052, No. 345, § 1, effective in 90 days. Renumbered from 18 Pa.C.S.A. §1371 by 1980, Oct. 5, P.L. 693, No. 142, § 401(a), effective in 60 days. 42 Pa.C.S.A. § 9771. *See also* Pa.R.Crim.P. 1409.

courts must use in determining whether probation has been violated: "A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." Commonwealth v. Infante, 585 Pa. 408, 421, 888 A.2d 783, 791 (2005); Commonwealth v. Burrell, 497 Pa. 367, 441 A.2d 744 (1982) *citing* Commonwealth v. Kates, 452 Pa. 102, 305 A.2d 701 (1973); Commonwealth v. Brown, 503 Pa. 514, 469 A.2d 1371, 1376 (1983). The Commonwealth need only make this showing by a preponderance of the evidence. Commonwealth v. A.R. 2010 PA Super 4, 990 A.2d 1 (Pa. Super. 2010).

Finally, under Pennsylvania law, a challenge to the validity of a sentence is a challenge to its legality. Commonwealth v. Isabell, 467 A.2d 1287 (Pa. 1983); Commonwealth v. Quinlan, 639 A.2d 1235 (Pa. Super. 1994), *appeal granted*, 659 A.2d 986 (Pa. 1995), *appeal dismissed as improvidently granted*, 675 A.2d 711 (Pa. 1996). If a court does not possess statutory authorization to impose a particular sentence, then the sentence is illegal and must be vacated. Commonwealth v. Thier, 663 A.2d 225, 229 (Pa. Super. 1995), *appeal denied*, 670 A.2d 643 (Pa. 1996). If no statutory authorization exists for a particular sentence, then that sentence is illegal and subject to correction. Thier, *supra*. An illegal sentence must be vacated. Commonwealth v. Kratzer, 660 A.2d 102, 104 (Pa. Super. 1995), *appeal denied*, 670 A.2d 643 (Pa. 1996) *citing* Commonwealth v. Lee, 638 A.2d 1006 (Pa. Super. 1994).

In the instant matter, Appellant argued that it was erroneous to find Appellant in violation of probation because a preponderance of evidence of Appellant's violating conduct had not been presented. This claim lacked factual and legal merit.

"The Commonwealth establishes a probation violation meriting revocation when it shows, by a preponderance of the evidence, that the probationer's conduct violated the terms and conditions of his probation and that probation has proven an ineffective rehabilitation tool incapable of deterring probationer from future antisocial conduct." Commonwealth v. Ahmad, 2008 PA Super 271, 961 A.2d 884, 888–89 (2008) *quoting* Commonwealth v. Perreault, 930 A.2d 553, 558 (Pa. Super 2007) (citation omitted). "[I]t is only when it becomes apparent that the probationary order is not serving this desired end [of rehabilitation] the court's discretion to impose a more appropriate sanction should not be fettered." Commonwealth v. Distefano, No. 581 EDA 2018, 2019 WL 6492588, at *4 (Pa. Super. Ct. Dec. 3, 2019) *quoting* Commonwealth v. Ahmad, *supra*; Commonwealth v. Carver, 923 A.2d 495, 498 (Pa.Super.2007) (citation omitted).

As abundantly evidenced during the violation hearings held on January 10, 2020, January 24, 2020 and March 6, 2020, Appellant's repeated and multi-faceted supervision violations had warranted revocation. Probation supervision had been easily proven to have been an ineffective rehabilitation tool incapable of deterring Appellant from future antisocial conduct. Appellant's overall reported conduct had easily demonstrated his complete disregard for authority of the trial court.

On January 6, 2020 the admitted, incorporated and recorded GAGNON II summaries had demonstrated that while under this Court's directed probation supervision, Appellant had repeatedly failed to report at least ten times to his assigned probation officer. He had admitted to ingestion of marijuana and subsequently tested positive for this same illegal controlled substance to which had previously confessed to suffering from addiction. He had been arrested in two different counties for

8

various criminal offenses. Wanted cards had also been issued at least once due his chronic disappearances. He responded to probation directives by becoming frequently combative and verbally abusive toward the designated officers. His excuses for his repeated non-compliance were disingenuous.

As to the arrest warrant docketed in Delaware County, Appellant had been charged with Driving While Operating Suspended or Revoked Driver's License on May 16, 2019. Notably, at the time of his arrest in Delaware County, Appellant had not been given permission from the assigned probation officer to leave Philadelphia County. As to the arrest on September 16, 2019 docketed in Philadelphia under MC-51-CR-0024626-2019, Appellant had been charged with Robbery-Inflicting/ Threatening Bodily Injury and related charges. He had remained unemployed and had not been making minimally due payments toward court mandated fines and costs.

On January 10, 2020, after full hearing wherein technical violations were largely admitted and before Appellant's connection to the District Attorney's Office of Philadelphia employee became known, this Court had determined that Appellant had violated the conditions of his probation based upon presentment of a preponderance of evidence and had summarized the preceding thorough evaluation of all circumstances known then to date as follows:

> **THE COURT:** Mr. Wilcox comes backs before the court due to reported violations of his probation and/or parole. A detainer was originally lodged due to the fact that he was arrested in Philadelphia under docket number MC-51-CR-002462 of 2019. Charges of robbery and other related offenses. A detainer was lodged on September 17th of 2019. However, on December 16th, 2019, apparently the matter was dismissed for lack of prosecution. Commonwealth was not ready. So the detainer was lifted.
>
> However, Mr. Wilcox apparently also had a Delaware County warrant outstanding and he was instructed to bring proof that that matter was resolved. And he failed a drug test

9

and claimed that he was using marijuana while in custody on the detainer. And he was instructed to bring proof of employment. Prior to the warrant and the detainer being lodged....

Ms. Fairman, are you handling Mr. Wilcox?

> **MS. FAIRMAN:** I am, your Honor.
> **THE COURT:** Okay.

Prior to the detainer being lodged for the then open case of robbery, Mr. Montgomery kept missing appointments: August 23rd, October 24th, November 26th, December 27th. And into the year 2019: January 28th, January 30th, May 9th, May 21st, June 20th, August 19th. The arrest warrant relative to Delaware County was for driving while suspended license. He wasn't supposed to be leaving Philadelphia County. What he was doing there, driving without a license, is beyond my comprehension. And had not made regular payments towards fines and costs as directed.

(N.T., 01/10/2020, pp. 3-4).

Following the initial probation hearing on January 10, 2020, concerning Appellant's multi-formed probation violations, this Court directed Appellant's assignment to the house arrest supervision with electronic monitoring with increased supervision as required by this division of the Adult Probation and Parole Department in lieu of county custody. He was permitted to subsequently surrender to that program to enable non-custodial inspection and evaluation of his household and to demonstrate compliance with the probation house-arrest rules. Pre-sentence investigations, mental health and drug and alcohol evaluations were also ordered. Appellant failed the resulting drug test.

Pending evaluations, this Court was notified by the Adult Probation and Parole Department House Arrest-Electronica Monitoring Program officials of Appellant's additional violation and resulting custodial confinement following Court ordered inspection of Appellant's household. This inspection revealed the presence of a firearm reportedly owned by Appellant's maternal aunt with whom Appellant had been living with while under this Court's supervision and well after

10

acknowledging zero tolerance policy of access to firearms directed by this Court and by the probation department. This Court was further notified that the maternal aunt who had been involved was an active employee of the District Attorney's Office of Philadelphia and that this aunt had directly contacted the assigned probation investigators to complain about Appellant's naturally resulting confinement following discovery of the blatant violation.

This Court notified all parties and counsel of the additional violation report and scheduled a hearing to evaluate the reported violation and to determine the extent of conflict of interest. This evidentiary hearing evidence had been introduced that revealed Appellant's flagrant defiance of the Order of Sentence and consistent probation department directives. Appellant had been continually residing in a household while under this Court's supervision household where firearms had been kept.

During this evidentiary hearing held on January 24, 2020, the assigned assistant district attorney readily agreed to avoid any appearance of impropriety by referring representation of the Commonwealth of Pennsylvania to the Office of Attorney General. Further evidentiary hearing was subsequently scheduled for March 6, 2020 pending transfer of representation and completion of evaluations.

On March 6, 2020, the assigned Deputy Attorney General Christopher Phillips represented the Commonwealth of Pennsylvania. Following this Court's announced thorough recitation of preceding events, additinal competent and compelling evidence was presented concerning Appellant's violative conduct that had led to his initial detention and arrest for robbery and assault and related offenses while under this Court's probationary supervision on August 30, 2019.

11

On March 6, 2020, Philadelphia Police Officer Joseph Porretta testified that he was working as a uniformed patrol officer and assigned to respond to a radio call of robbery at a delicatessen located within the 6100 block of Woodland Avenue in Philadelphia about 5:20 p.m. on August 30, 2019. There he said hat he had met with the complainant who while sobbing had excitedly reported being physically assaulted by Appellant. She told the officer that she had known Appellant as "Andre" and had utilized a d his services hack taxi driver. She reported that following an argument over payment for a taxi ride and sneaker reimbursement, she ran inside the Chinese store. She said he had followed her, struck her, tussled with her and grabbed her cell phone, sneakers and left with her belongings in his automobile which she had described accurately.

Officer Porretta testified that after speaking to the victim, he viewed the supporting video footage from multiple cameras inside the deli store. The authenticated videos that the officer had viewed were introduced into the record. They unequivocally demonstrated Appellant's violent assault and forcible taking of personal items. Once the victim's version of events was confirmed, the officer had submitted flash information to fellow law enforcement and Appellant, who had identified himself as Andre Montgomery, was identified as the perpetrator and promptly arrested.

Southwest Detective Steven Farley testified that as art of his investigation into the robbery he went to eh Chinese store to retrieve the video feeds. Along the way he observed Appellant's vehicle parked in the area and a cell phone in the vehicle. He had obtained a Search Warrant and retrieved the complainant's cell phone and returned it to her. He reported that the Appellant had provided a voluntary statement after Miranda warnings had been provided to a fellow investigator. He submitted all data and the criminal charges were lodged. At the end of this additional evidentiary hearing, this

Court concluded that the cumulative evidence to date had amply demonstrated that Appellant had committed a robbery which violated the terms and conditions of this Court's supervision. As this Court stated:

THE COURT: ". . . This Court was advised that there were violations of the terms of probation stemming initially from the reported positive drug tests entered on December 30th, 2019, January 10th, 2020, positive for THC, marijuana. . .

Okay. Well, I find that the evidence does demonstrate that he committed a robbery, so it violates the terms and conditions of my sentence. I think the evidence was fairly clear. He strong-armed a very tiny individual. Mr. Montgomery, Mr. Wilcox is a very large individual, and the menacing manner in which he approached the complainant, albeit whether or not he thought he was justified, he was not, and he physically forced the removal of the cell phone. I can see it with my own eyes as to what he did. And contextually, his stated excuses of his behavior do not comport with the reporting, an immediate reporting of same.

So from all of the facts and direct and circumstantial evidence presented before me, I find that that is violative behavior while under my supervision.

Now, placing that also as one more layer of violating behavior that has been presented before this Court -- well, if memory serves me correctly, I have all told to date, I have positive, illegal narcotics being used while under my supervision. That's violating behavior. I have a period of time where the defendant had been on wanted cards, violating behavior. I have the defendant's intentional defiance of the Court's order and admitted as the same when he signed the firearm policy not to reside in any location with a firearm and averring that there were no firearms in that place of residence, and he lived there quite some time with a firearm in that residence. As well as the testimony presented to me to date.

I also find that there was violating behavior in that it's not the first time I'm seeing or hearing about Mr. Wilcox's angry outbursts. In fact, the officer, his probation officer, reported same in his dealings with her. And he was given multiple chances to try to resolve his behavior, even when there were discussions about not reporting as he was supposed to do and he did not. He was often verbally combative with his probation officer to the point that it was noted within the Gagnon summaries, much concern about his violative -- what's the right word -- his eruptions of anger, for lack of a better term. And that's with his probation officer.

All right. I'm going to make part of the record all of the respective hearings that I've had with respect to this defendant thus far, and I'm revoking your period of probation."

13

(N.T., 03/06/2020, pp. 6, 37-40).

As Appellant's Statement of Errors had conceded, preponderance of the evidence was the proper standard of proof that was to applied in a probation violation hearing. Appellant disagreed that this standard of proof had been met. The cumulative evidence that had been introduced throughout this process, however, easily defeated this claim. This Court cannot be found in error for applying that exact standard in finding that Appellant had violated the terms and conditions of his probationary supervision upon review of Appellant's reported myriad and multi-faceted forms of violating conduct. Sufficient evidence soundly supported this Court's factual and legal determinations. Thus, no abuse of discretion had occurred.

Next, Appellant broadly argued that the resulting sentence following due revocation had been excessive. This argument as so simply stated failed to present a reviewable claim. Pennsylvania's sentencing system is based upon individualized sentencing, and when viewed *in toto*, the record clearly indicated that this Court had rendered an individualized and reasonable penalty after due and stated consideration of all relevant sentencing factors.

Appellant had entered a negotiated guilty plea to the crime of Insurance Fraud and Conspiracy, graded as a misdemeanor of the first degree, which carried a maximum statutory penalty of five (5) years of incarceration. Thus, Appellant had been sentenced well under the maximum sentence allowed under the law. Because Appellant had deliberately and repeatedly violated the terms of probationary supervision, revocation was justified and the resulting sentence could have equaled the amount of time originally available.

Moreover, the length of a VOP sentence "rests peculiarly within the discretion of the VOP

14

judge." Commonwealth v. Reaves, 592 Pa. 134, 923 A.2d 1119, 1131 n.12 (2007). "[S]entencing guidelines do not apply to sentences imposed as a result of probation or parole revocations." Commonwealth v. Coolbaugh, 770 A.2d 788, 792 (Pa.Super. 2001). Instead, a VOP sentencing court "is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence." Commonwealth v. Pasture, 630 Pa. 440, 107 A.3d 21, 27-28 (2014).

The rationale for this difference is that a "convicted defendant released into the community under such control of the sentencing judge, who violates the terms of his release[,] thereby betrays the judge's trust." Reaves, *supra* at 1131 n.12. Further, "since the defendant has previously appeared before the sentencing court, the stated reasons for a revocation sentence need not be as elaborate as that which is required at initial sentencing." Pasture, *supra* at 28. See Commonwealth v. Presley, 2018 PA Super 207, 193 A.3d 436, 445-47 (2018), *appeal denied*, 201 A.3d 154 (Pa. 2019)

In this case, a split sentence of state supervised confinement followed by probation was imposed which had been computed to be a fraction of the originally available maximum period of five (5) years of incarceration. Therefore, despite Appellant's argument to the contrary, the imposition of this sentence had not been illegal and had been imposed within the statutory power of the court. Confinement had been imposed only after Appellant had violated probation with multiple failed drug tests, refused treatment and demonstrated many forms of overall non-compliant behavior. Probationary supervision had been rendered to be most ineffective as a rehabilitative or crime deterrent tool.

Moreover, the imposition of confinement upon revocation of Appellant's probation was not a second punishment for his criminal act, but was an integral element of the original conditional sentence. Consequently, this Court was well within its statutory power to sentence Appellant to a

15

term of confinement of two to four years, with credit for time served, plus one year of probation upon revocation of his probation. Appellant's broad claim of illegality because it was "excessive" had no merit. *See* <u>Commonwealth v. Carver</u>, 923 A.2d 495, 498 (Pa. Super. 2007) (acknowledging technical violations, where flagrant and indicative of an inability to reform, can support revocation and imprisonment). <u>Commonwealth v. Ortega</u>, 2010 Pa. Super 87, ¶ 12, 995 A.2d 879, 884 (2010).

The Superior Court of Pennsylvania has repeatedly acknowledged the very broad standard that sentencing courts must use in determining whether probation has been violated: a probation violation is established whenever it is shown that the conduct of the probationer indicates that the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct. *See* <u>Commonwealth v. Ortega</u>, 995 A.2d 879, 886 (Pa. Super. 2010). In the instant matter, Appellant had amply established that probation had been a futile rehabilitative vehicle. Zero deterrence of his anti-social and criminal conduct had resulted.

Contrary to defense claim, this Court had thoroughly considered Appellant's family and community ties, as well as his rehabilitative needs when determining an appropriate sentence. All relevant data gleaned from the specifically referenced and incorporated presentence investigative reports and mental health assessments had been analyzed.

This Court had succinctly stated sound rationales for imposition of sentence. Relevant sentencing factors that had been evaluated had been recited as follows:

> THE COURT: "... All right. Well, the best predictor of how someone is going to behave is viewing the conduct that preceded that. My view based upon the review of your conduct thus far is that you don't follow the rules unless you choose to or you like

them. Because your history reflects exactly that when things don't go your way, you react potentially violently and angrily. You may have felt that
you were justified in taking the phone off of that girl because of your prior history with her. You know, I don't doubt that there was a history with her. But that's not how we conduct ourselves. And the problem is that to date, that's exactly how you've conducted yourself.

I start with your criminal record going back to at least 1997, reflects convictions of dealing narcotics on multiple occasions, theft by receiving stolen property, other dealings of narcotics, possession of arms, convicted of a crime of violence, going through to 2003. A conviction of assault, 1999. Conviction of another assault, 2003. Conviction of unauthorized use of auto, 2004. And there's a myriad of other arrests worked in there that either are negotiated out or
withdrawn. And then the case before me which involves falsehood to get money. If I remember correctly, I think it was a slip and fall from an insurance company.

And while you were in custody in the state, sir, you apparently had difficulty behaving yourself. Your infractions include four misconducts, infractions ranging from refusing to obey an order to fighting, punishments ranging from 15 days to 60 days disciplinary instructions. And that's when you were in state confinement.

Most notably, sir, you are correct, you are 42 years old, or 43 years old at this point, and you should be well beyond this activity and, yet, you're not. Your juvenile records account for additional juvenile adjudications and commitment to Glen Mills or drug dealing in effect. So there were efforts to rehabilitate you early on, sir.

Your ingestion of narcotics you alleged began at the age of 23, occasionally drinking on the side. Okay. You initially tried to claim much of your record wasn't actually you. Well, that wasn't the truth. So, you have difficulties with controlling your temper and telling the truth and respecting other people's property rights.

You displayed complete disrespect to this Court. I certainly did not appreciate after giving you the opportunity not to have a detainer and staying in custody, coming to find out that here you had been lying to the Probation Department all the way through. And frankly, the Probation Department is the arm of this Court. And I also did not appreciate the efforts extended on your behalf once that bit of information regarding the firearm was revealed.

So each of those respective technical violations to date that seem to take on lives of their own reflect to this Court that you are a risk of recidivism, that the authority of the Court needs to be redeemed, and that you need to be held accountable for your actions.

So, here's what we're going to do -- I just want to get the right count here..."

17

(N.T., 03/06/2020, pp. 49-52).

In short, the transcribed record abundantly established that Appellant had not borne his burden of proving that any abuse of sentencing discretion had occurred or that he had received an illegal sentence.

## IV. CONCLUSION

In summary, this Court carefully reviewed the entire record and found no harmful, prejudicial, or reversible error had existed. For the reasons set forth above, the Order of Sentence that had been imposed following his repeated violations of probation should be affirmed.

BY THE COURT:

ANNE MARIE B. COYLE, J.