J-S40044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WALLACE LARDANI | : | |
| | : | |
| Appellant | : | No. 2013 EDA 2021 |

Appeal from the Judgment of Sentence Entered February 19, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0012402-2014


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WALLACE LARDANI | : | |
| | : | |
| Appellant | : | No. 2014 EDA 2021 |

Appeal from the Judgment of Sentence Entered February 19, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0012397-2014


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WALLACE LARDANI | : | |
| | : | |
| Appellant | : | No. 2015 EDA 2021 |

Appeal from the Judgment of Sentence Entered February 19, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0012400-2014

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
                Appellee :
:
           v. :
:
WALLACE LARDANI :
:
             Appellant : No. 2016 EDA 2021

Appeal from the Judgment of Sentence Entered February 19, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012401-2014

BEFORE: PANELLA, P.J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED JUNE 12, 2023**

Appellant, Wallace Lardani, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following revocation of his probation. Although we hold that Appellant's issues raised on appeal do not merit any relief, we *sua sponte* vacate the probationary portion of Appellant's revocation sentences as illegal and remand for resentencing.

In its opinion, the trial court set forth the relevant facts and procedural history of this case as follows:

> The summarized underlying facts supporting the guilty pleas for the [above-captioned cases] included Appellant's arrest, lodging of criminal charges and commensurate apprehension for violation of probation by Philadelphia police officers in 2014 while operating a stolen Black Dodge Ram truck that had been reported as involved in a string of vehicle thefts. Upon further discovery and investigation of numerous stolen vehicle parts, ranging from tires to lug nuts that had been recovered from inside the truck, Appellant had been further implicated in conspiratorial criminal

- 2 -

conduct that had affected numerous victims. Appellant entered respective negotiated guilty pleas to three felony counts of receiving stolen property [("RSP")] with a corresponding three counts of conspiracy, and the misdemeanor offense of possession of an instrument of a crime [("PIC")], also with a corresponding charge of conspiracy.

On April 16, 2015, after conducting full colloquies, this [c]ourt accepted the tendered guilty pleas and imposed the negotiated sentences that envisioned concurrently running periods of probationary supervision that had followed consecutively to all concurrently running periods of confinement. In each case, Appellant was sentenced to one (1) year and six (6) months to four (4) years of confinement beginning April 16, 2015, with credit being accorded for custodial time served, followed by five (5) years of supervised and specified rehabilitative condition periods of reporting probation. The rehabilitative conditions included regular reporting, payment of negotiated amounts of restitution to each impacted victim, compliance with random drug screening and treatment, completion of vocational training and engaged legitimate employment. Random home and vehicle checks were directed.

During the ensuing period of probation in each case, however, Appellant once again absconded for a lengthy period after failing to report as directed with his assigned Probation Officer on October 21, 2019. Probation wanted cards had been issued. Formal First Judicial District of Pennsylvania bench warrants had been issued in each case on January 15, 2020. Arrest warrants for Appellant had also been issued from authorities in Shenandoah, Pennsylvania following reports of Appellant's complicity in the burglary and related thefts from a residence in that county. All probationary and law enforcement efforts to locate Appellant were unsuccessful. All previously negotiated amounts of restitution, fines and costs in all cases remained unpaid.

Appellant was finally detained on May 14, 2020, following his arrest by Philadelphia uniformed police officers and lodging of resulting criminal charges including felony graded charges of Criminal Trespass, Theft by Unlawful Taking,

Theft by Receiving Stolen Property, and Criminal Conspiracy. On that date [at] about 3:00 a.m., uniformed patrol officers responded to ongoing radio call reports emanating from Allied Security officers that two individuals had entered a secured pad-locked and highly fenced-in parking lot owned by the Elwyn Institute located at 4400 Ludlow Street, Philadelphia via a large step-ladder. They had been observed by security personnel pulling on car doors that had been parked inside the privately-owned lot.

Upon arrival, police officers detained one male just outside the lot. They observed a silver Toyota Prius registered to Elwyn Institute that had been damaged and precariously perched on a small vehicle jack. A yellow reciprocating saw was seen on the ground next to the Prius. There was also noticeable evidence that something had been cut presumably from the saw from that vehicle's undercarriage. As officers approached, Appellant crouched by the lot fence, ran across the lot to an adjoining yard, climbed a retaining wall onto a patio and then jumped onto a nearby roof. He was apprehended by law enforcement after his leaping flight.

It was also reported that the retrieved video from the camera feed that had been installed by Elwyn Institute, had captured much of the incident. In addition to the evidence that both males had been acting criminally in concert, law enforcement officials recovered a black Pontiac registered to Appellant that had been parked on Ludlow Street just outside of the invaded lot. Investigators recovered from that vehicle an unexplained Pennsylvania automobile registration plate and a radio scanner that had been used to monitor police responses. The Pontiac was held for fingerprinting processes. The reciprocating saw was retrieved. The entire scene reflective of the vehicle damage and use of the high ladder was photographed. Naturally both males were duly arrested and charged as conspirators.

Upon notification of Appellant's apprehension and arrest, this [c]ourt directed county probation department's detention of Appellant and his commitment pending further proceedings. *Gagnon I* and *II* violation and revocation evidentiary hearings were scheduled and continued at the

request of the defense after receiving due notifications.[1] Appellant, by and through his privately retained counsel, Brian Fishman, Esquire, repeatedly demanded lifting of the probation detainers, objected to any consideration of any evidence related to the events of May 14, 2020 and simultaneously conceded to the technical violations related to the extended period of absconding and related non-reporting, nonpayment and still open warrants. The defense contentions and objections were overruled.

The evidentiary revocation hearing[s] were bifurcated and completed on September 24, 2020. Following completion of hearings, this [c]ourt formally revoked all periods of probation due in each case based on careful analysis of cumulative evidence of Appellant's multi-formed violations. These violations included admitted absconding that had followed Appellant's chronic non-reporting to his probation officer; failure to attend court proceedings to address the in and out of county warrants; refusal to pay any due restitution, fines, court costs; and general non-compliance with any of the court-directed rehabilitative conditions of probationary supervision. This demonstration of sufficient evidence had included Appellant's brazen engagement in concerted criminal activity and flight from law enforcement officials on May 14, 2020 that led to his apprehension, detention and lodging of new criminal charges. Following revocations, presentence investigative [("PSI")] reports and mental evaluations and a sentencing hearing were ordered and scheduled for February 19, 2021.

On February 19, 2021, after announcing a thorough review of the mental health assessment and [PSI] reports, a full sentencing hearing of aggravating and mitigating circumstances was presented by the Commonwealth's representative, Assistant District Attorney Jan McDermott,

_____

[1] ***Gagnon v. Scarpelli***, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). ***See also Commonwealth v. Ferguson***, 761 A.2d 613 (Pa.Super. 2000) (explaining that when parolee or probationer is detained pending revocation hearing, due process requires determination at pre-revocation hearing (***Gagnon I*** hearing) of probable cause to believe violation was committed; upon finding of probable cause, second, more comprehensive hearing (***Gagnon II*** hearing) follows before court makes final revocation decision).

and defense counsel, Brian Fishman, Esquire.

As a result, … the [court imposed an] aggregated sentence from all five cases…for a minimum state supervised term of confinement of five (5) years to [a] maximum ten (10) years of state supervised confinement, followed by the state supervised period of five (5) years of probation.[2] Credit for custodial time served was accorded. Supervisory and rehabilitative conditions were verbally specified within each Order of Sentence.

Although post-sentence motions were filed on behalf of Appellant by Brian Fishman, Esquire on February 24, 2021 which had been denied by operation of law, no appeal of any case was filed. On March 11, 2021, Valerie Joy Palazzo, Esquire was retained and entered her appearance [as] counsel on behalf of Appellant. Thereafter, no direct appeal was filed. Subsequently, Appellant, by and through Benjamin J. Simmons, Esquire, filed a timely Petition for relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq*. ("PCRA") seeking reinstatement of appellate rights. Per agreement with the Commonwealth's representative, Appellant's PCRA request was granted, and his direct appellate rights were restored by this [c]ourt on August 25, 2021. A counseled Notice of Appeal was filed on behalf of Appellant on August 25, 2021 by Valerie Joy Palazzo, Esquire.[3] A counseled Statement of [Errors] Complained of on Appeal Pursuant to P[a].R.A.P. 1925(b) was filed on September 20, 2021.

(Trial Court Opinion, filed January 4, 2022, at 3-8).

Appellant raises four issues for our review:

Did the Trial Court err in *sua sponte* ordering [the]

---

[2] The court sentenced Appellant at the four above-captioned dockets, as well as a fifth case docketed at CP-51-CR-000470-2014 involving retail theft. Appellant has not appealed from the judgment of sentence at this docket number.

[3] Appellant filed a notice of appeal at each of the four above-captioned docket numbers. This Court subsequently consolidated the appeals *sua sponte*.

Commonwealth to hold a **Daisey Kates**[4] hearing over Defense counsel's objection and the Commonwealth's objection when the Commonwealth had not filed a written motion to proceed as such and when Appellant was still presumed innocent as he had not been convicted of the new charges?

Did the Trial Court err in sentencing Appellant to an aggregate term of 5-10 years of incarceration followed by 5 years of consecutive probation when the only violation that should have been considered is Appellant's technical violation, or failure to report to probation?

Did the Trial Court err in imposing a sentence that was unduly harsh, excessive, inconsistent with the sentencing code, contrary to fundamental norms underlying the sentencing process because it did not take into consideration the information contained in the Pre-Sentence Report, the Mental Health Report, arguments for mitigation, Appellant's lack of any violent background, his gainful employment, the loss of his mother while incarcerated and the subsequent loss of his step-brother and other information including his need for rehabilitation?

(Appellant's Brief at 2).

Following the filing of Appellant's brief on appeal, the Commonwealth *nolle prossed* the charges lodged against Appellant on May 14, 2020. Thus, Appellant filed an application for relief in this Court seeking leave to supplement his brief. This Court granted Appellant permission to do so, and Appellant filed a supplemental brief (incorporating all issues from the principal brief) raising the following issue:

---

[4] Where the court holds a revocation hearing based on new criminal charges before the defendant's trial on the new charges, the proceeding is commonly known as a "**Daisey Kates** hearing." *See Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973).

- 7 -

Is the trial court's excessive sentence of five to ten years of confinement for a revocation of probation void when the court considered the facts of a new arrest in a **Daisey Kates** style Violation of Probation hearing and the new arrest was subsequently *nolle prossed* by the Commonwealth.

(Appellant's Supplemental Brief at 2).

When reviewing the outcome of a revocation proceeding, this Court is limited to determining the validity of the proceeding, the legality of the judgment of sentence imposed, and the discretionary aspects of sentencing. **Commonwealth v. Cartrette**, 83 A.3d 1030 (Pa.Super. 2013) (*en banc*). In general, "[r]evocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." **Commonwealth v. Colon**, 102 A.3d 1033, 1041 (Pa.Super. 2014), *appeal denied*, 631 Pa. 710, 109 A.3d 678 (2015).

For purposes of disposition, we combine some of Appellant's issues. Initially, Appellant argues that the Commonwealth did not file written notice of its intent to proceed with a violation of probation hearing prior to Appellant's trial on the new May 2020 charges. In fact, Appellant insists the Commonwealth **opposed** proceeding to the revocation hearing prior to trial on Appellant's new charges. In the absence of written notice, Appellant asserts that his due process rights were violated. Appellant acknowledges that case law permits the trial court to hold a revocation hearing prior to trial on new charges forming the basis for revocation of probation, but he indicates

that our courts have cautioned against doing so, in the event that the Commonwealth subsequently drops the new charges or the defendant is acquitted of the new charges. Appellant claims the evidence against him relevant to the new charges was extremely weak and circumstantial, and Appellant's flight from authorities alone did not establish his guilt.

Additionally, Appellant emphasizes that the Commonwealth has now withdrawn the new charges.[5] Appellant avers that the Commonwealth's decision to *nolle prosse* the new charges renders his revocation sentence void, as that sentence was at least partially based on the new charges. Appellant suggests that the Commonwealth's decision to *nolle prosse* the new charges is no different than an acquittal. Appellant concludes the trial court's revocation sentence was inappropriate under these circumstances, and this Court must vacate and remand for resentencing. We disagree.

Pennsylvania Rule of Criminal Procedure 708 governs violations of parole/probation, in pertinent part, as follows:

> **Rule 708. Violation of Probation, Intermediate Punishment, or Parole: Hearing and Disposition**
>
> **(A)** A written request for revocation shall be filed with the clerk of courts.

---

[5] In Appellant's second issue raised in his principal brief, Appellant argued that the court should have only considered evidence of his technical probation violations while the new charges were still pending, because he was still presumed innocent of those charges. In his supplemental brief, Appellant elaborates on this claim with a purportedly stronger argument that the new charges are no longer pending against him based on the Commonwealth's decision to *nolle prosse* the new charges.

**(B)** Whenever a defendant has been sentenced to probation or intermediate punishment, or placed on parole, the judge shall not revoke such probation, intermediate punishment, or parole as allowed by law unless there has been:

(1) a hearing held as speedily as possible at which the defendant is present and represented by counsel; and

(2) a finding of record that the defendant violated a condition of probation, intermediate punishment, or parole.

Pa.R.Crim.P. 708(A)-(B). Additionally, with respect to revocation of probation, Section 9771 of the Sentencing Code provides:

**§ 9771. Modification or revocation of order of probation**

**(a) General rule.**—The court has inherent power to at any time terminate continued supervision, lessen the conditions upon which an order of probation has been imposed or increase the conditions under which an order of probation has been imposed upon a finding that a person presents an identifiable threat to public safety.

**(b) Revocation.**—The court may increase the conditions, impose a brief sanction under section 9771.1 (relating to court-imposed sanctions for violating probation) or revoke an order of probation upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation. The attorney for the Commonwealth may file notice at any time prior to resentencing of the Commonwealth's intention to proceed under an applicable provision of law requiring a mandatory minimum sentence.

**(c) Limitation on sentence of total confinement.**—The court shall not impose a sentence of total confinement upon revocation unless it finds that:

(1)  the defendant has been convicted of another crime; or

(2)  the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3)  such a sentence is essential to vindicate the authority of the court.

**(d)  Hearing required.**—There shall be no revocation or increase of conditions of sentence under this section except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation. Probation may be eliminated or the term decreased without a hearing.

42 Pa.C.S.A. § 9771.

A probationer's due process rights at a revocation hearing include: (1) written notice of the claimed violation(s); (2) disclosure of the evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the factfinder as to the evidence relied on and reasons for revocation. *Kates, supra* at 118, 305 A.2d at 709. Once these requirements are met, the court must decide following a hearing

> whether the parolee or probationer has in fact acted in violation of one or more conditions of his parole or probation. It is this fact that must be demonstrated by evidence containing probative value. Only if it is determined that the parolee or probationer did violate the conditions does the second question arise: should the parolee or probationer be recommitted to prison or should other steps be taken to protect society and improve chances of

rehabilitation?

*Commonwealth v. Sims*, 770 A.2d 346, 349 (Pa.Super. 2001) (internal citations and quotation marks omitted). "Unlike a criminal trial where the burden is upon the Commonwealth to establish all of the requisite elements of the offenses charged beyond a reasonable doubt, at a revocation hearing the Commonwealth need only prove a violation of probation by a preponderance of the evidence." *Id.* at 350 (internal quotation marks omitted).

"Technical violations can support revocation and a sentence of incarceration when such violations are flagrant and indicate an inability to reform." *Commonwealth v. Carver*, 923 A.2d 495, 498 (Pa.Super. 2007). "Nevertheless, even when a probation violation is present, revocation is not automatic. Rather, the focus must remain on whether probation can still be an effective tool for rehabilitation." *Id.*

"The threat of revocation may be executed on the basis of an arrest and evidence of some facts in addition." *Sims, supra* at 350. *See also Commonwealth v. Allshouse*, 969 A.2d 1236 (Pa.Super. 2009) (reiterating well-settled law that probation cannot be revoked **solely** on basis of arrest).

> [W]hen the basis for revocation arises from the advent of intervening criminal conduct, a [revocation] hearing may be held prior to any trial arising from such criminal conduct. On the other hand, this Court has recognized that it is not unreasonable for a probation revocation hearing to be postponed pending adjudication of criminal charges which are the basis for the revocation.

*Commonwealth v. Infante*, 585 Pa. 408, 421, 888 A.2d 783, 791 (2005) (internal citations and quotation marks omitted), *abrogated on other grounds by Commonwealth v. Foster*, 654 Pa. 266, 214 A.3d 1240 (2019). The rationale and preference for deferring revocation proceedings is to "avoid the possibly unjust result of revoking probation, only to find later that the probationer has been acquitted of the charges that prompted the revocation hearing." *Id.* at 422, 888 A.2d at 792. *See also Commonwealth v. Royster*, 524 Pa. 333, 572 A.2d 683 (1990) (reversing and vacating revocation sentence where new convictions, which had formed **sole** basis for revocation of probation, were ultimately overturned on double jeopardy grounds).

More recently, our Supreme Court authored its decision in *Commonwealth v. Mayfield*, ___ Pa. ___, 247 A.3d 1002 (2021). In that case, the Supreme Court addressed whether the trial court had authority to appoint a private attorney as a "special prosecutor" to represent the Commonwealth, and to remove the District Attorney as the prosecutor in a probation revocation matter, after the Assistant District Attorney had informed the trial court that the Commonwealth wanted to defer the probation revocation proceedings pending resolution of new charges lodged against the defendant. The Court decided that no statute or inherent powers granted the trial court authority to take such action. *Id.* at ___, 247 A.3d at ___. Nevertheless, the Court went on to

> caution that our decision should not be interpreted as approving the Commonwealth's refusal to participate in a prompt [violation of probation] hearing as the court instructed. Our law is clear: trial courts have broad authority to modify or terminate their own supervisory orders. And while this Court has expressed a preference for deferring [violation of probation] proceedings until after the resolution of a defendant's new charges, we have never held that trial courts lack the discretion to hold [violation of probation] hearings prior to a probationer's new trial.

*Id.* (internal footnotes omitted). *See also Commonwealth v. Parson*, 259 A.3d 1012, 1020-21 (Pa.Super. 2021) (relying on *Mayfield* and rejecting parties' assertion that trial court abused its discretion by proceeding with violation of probation hearing over Commonwealth's objection or before appellant's new charges were resolved; explaining that both Section 9771 and our Supreme Court's decision in *Mayfield* make clear that it is court, not Commonwealth, that has "inherent power" to revoke probation; stating that although it is often more prudent to defer violation of probation proceeding until after resolution of probationer's new charges, it is not required; thus, court had authority to proceed with appellant's violation hearing once alleged probation violations were reported by Probation Department, regardless of status of appellant's new case or Commonwealth's position).

In *Commonwealth v. Banks*, 198 A.3d 391 (Pa.Super. 2018), this Court considered the effect of the Commonwealth's decision to *nolle prosse* new charges that had formed part of the basis for the revocation of the appellant's probation. There, the appellant pled guilty in June 2015 to theft and other offenses. The court imposed a county intermediate punishment

- 14 -

("IP") sentence of five years. One year later, while serving the IP sentence, the probation department filed a violation petition alleging new criminal charges against the appellant and technical violations. The new charges involved allegations of assault and theft. The technical violations included allegations of failure to report to supervision, failure to report for urine screenings, and/or the production of a urine sample that tested positive for drugs or alcohol.

At a subsequent hearing, the Commonwealth *nolle prossed* the new charges. The parties then proceeded to address the alleged IP violations. The appellant's counsel conceded the technical violations but voiced concern that the *nolle prossed* charges had formed the primary basis for the revocation hearing. Nevertheless, the court agreed to consider evidence of the now-*nolle prossed* charges. The probation officer first detailed the technical violations. The probation officer then referenced the new arrest and provided details of the appellant's conduct that had formed the basis of the *nolle prossed* charges. The appellant's counsel objected to this testimony on the basis that the new charges had been *nolle prossed*. The court did not specifically rule on the objection but questioning regarding the new charges stopped. Following the hearing, the court revoked the IP sentence and imposed an aggregate term of 18 to 42 months' imprisonment.

On appeal, the appellant challenged the revocation of his county IP sentence and the facts relied upon in fashioning a new sentence. Initially, this

Court noted that a revocation of a county IP sentence is equivalent to the revocation of probation. *Id.* at 397. This Court further explained that the appellant had preserved his challenge to the discretionary aspects of sentencing and raised a substantial question warranting our review, where the appellant had claimed the court relied on an impermissible sentencing factor by considering charges that had since been *nolle prossed*. *Id.* at 401.

Turning to the merits of the claim, this Court explained that the Commonwealth's decision to *nolle prosse* charges is "quite different from an acquittal." *Id.* at 403.

> A *nolle prosequi* is a voluntary withdrawal by a prosecuting attorney of proceedings on a particular criminal bill of information, which at anytime in the future can be lifted upon appropriate motion in order to permit a revival of the original criminal bill or information. Since a *nolle prosequi* acts neither as an acquittal nor a conviction, double jeopardy does not attach to the original criminal bill or information.
>
> * * *
>
> [Here, t]he Commonwealth was not estopped from introducing evidence of [the appellant's] arrest, the charges filed, or the factual allegations in support thereof. **The revocation court's consideration of this evidence was not only permissible, but also required before it could impose a sentence of total confinement**. For these reasons, we reject [the appellant's] assertion that the revocation court relied upon an impermissible factor in sentencing him.

*Id.* (emphasis added) (internal citations omitted).

In ***Commonwealth v. Joe***, No. 649 WDA 2019, 2020 WL 4645188

(Pa.Super. filed Aug. 11, 2020) (unpublished memorandum),[6] this Court considered a similar issue. In that case, the appellant pled guilty to possession of a firearm or other weapon in a court facility. The court sentenced him to one year of probation and imposed costs. While on probation, the Commonwealth charged the appellant with persons not to possess a firearm following a search of a house where the appellant and his girlfriend had rented a room. The Commonwealth then charged the appellant with a violation of probation for "failure to be of good behavior and comply with laws" and for failure to pay his costs/restitution. *Id.* at *1.

On March 27, 2019, the Commonwealth *nolle prossed* the new charge. Later that same day, the appellant appeared for a violation of probation hearing. Although the court acknowledged the Commonwealth's decision to *nolle prosse* the new charge, the court found that the appellant had violated his probation, revoked probation, and resentenced him to one year of probation.

On appeal, the appellant challenged the sufficiency of the evidence for the probation violation where the Commonwealth had *nolle prossed* the new charge. When analyzing the appellant's first issue, this Court initially noted that the trial court did not find a technical violation for the appellant's failure to pay restitution/costs, but only found that the appellant had committed a

_____

[6] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive authority).

new crime constituting a violation of his probation.

Next, this Court clarified

> that a defendant may have new charges *nolle prossed* and still have his probation revoked based upon the underlying conduct of those charges. Indeed, when a charge is *nolle prossed*, the Commonwealth is not prevented from pursuing a violation of probation **if evidence is presented to demonstrate that a crime occurred.** *See* [*Banks, supra*] (emphasis added). Under such circumstances, the Commonwealth must introduce evidence of the arrest, the charges filed, evidence of the conduct underlying the arrest and any physical evidence. *Id.*

*Id.* (internal footnote omitted).

Nevertheless, in *Joe*, the Commonwealth presented no evidence at all at the violation of probation hearing. Additionally, the Commonwealth did not assert any technical violation as the reason for revoking probation. Thus, the only evidence at the violation of probation hearing was the fact that the appellant had been arrested, which was insufficient on its own to revoke probation. Consequently, this Court held that the revocation of the appellant's probation and the resentencing were improper.

Instantly, regarding Appellant's claim of insufficient notice constituting a denial of his due process rights, the trial court stated:

> *Gagnon I* and *II* notices and reports had been formally issued and admittedly received. No objection had been raised by the defense concerning notification. This [c]ourt also issued formal written Orders that had notified well in advance all parties through their respective attorneys of their respective duties and the conditions upon which the hearings would be conducted well in advance of the full evidentiary hearings.

(Trial Court Opinion at 13-14).

Our review of the record supports the court's statements. The record shows that on May 16, 2020, the probation department filed a *Gagnon I* summary listing Appellant's potential direct violations of probation based on the new charges incurred on May 14, 2020. The summary also detailed the technical violation of Appellant's failure to report since October 21, 2019. The probation department lodged a *Gagnon II* summary on May 29, 2020, reiterating the allegations of the *Gagnon I* summary. The *Gagnon II* summary recommended that the court continue the violation of probation hearing pending resolution of the new charges.[7] The probation department subsequently lodged another *Gagnon II* summary, adding that Appellant had failed to pay court costs, fines, supervision fees, and restitution.

The parties appeared before the court on June 18, 2020. At that time, the court discussed Appellant's new charges. Appellant objected to proceeding to a violation of probation hearing before resolution of the new charges, and the court overruled the objection. (*See* N.T. Hearing, 6/18/20, at 30). The court stated that it would set a future date for a full violation of probation hearing, at which time the Commonwealth could present testimony from the officers who observed Appellant's conduct on May 14, 2020. The

_____

[7] As we discuss *infra*, the court possesses the ultimate authority to decide whether to proceed on the violation of probation hearing prior to disposition of new charges, regardless of the Commonwealth's position on this issue.

court scheduled this hearing for September 24, 2020, giving Appellant ample time to prepare for the hearing. Appellant does not dispute that he received discovery in advance of the hearing, and the record makes clear that he had an opportunity to cross-examine the Commonwealth's witness at the September 24, 2020 hearing. Thus, we cannot agree that Appellant was denied due process or that there was any failure to comply with the relevant rules of criminal procedure.[8] *See* Pa.R.Crim.P. 708(A); ***Kates, supra***.

Additionally, we reject Appellant's suggestion that the court was required to defer the violation of probation proceeding until resolution of the new charges. As our Supreme Court made clear in ***Mayfield***, it is the court—not the Commonwealth—that has the inherent authority to revoke probation. ***See Mayfield, supra***; ***Parson, supra***. Thus, notwithstanding the preference for deferring violation of probation hearings (***see Infante, supra***), it was not up to Appellant or the Commonwealth to make that decision, and the trial court acted within its authority in declining to defer the violation of probation proceeding. ***See Mayfield, supra***; ***Parson, supra***.

We further reject Appellant's suggestion that the Commonwealth's

---

[8] To the extent Appellant alleges a due process violation based on the Commonwealth's failure to provide written notice that it would proceed with the violation of probation hearing before resolution of his new charges, our Supreme Court's decision in ***Kates*** did not mandate such written notice, and Appellant cites no other authority in support of that claim. ***See Kates, supra***. Moreover, as discussed, the court notified Appellant three months in advance that it planned to proceed with the violation of probation hearing before disposition of the new charges.

decision to *nolle prosse* the new charges has the same effect as an acquittal. As this Court made clear in **Banks**, such a procedural posture is "quite different from an acquittal."[9] **See Banks, supra** at 403. Thus, no relief is due on these issues.

In his remaining claims, Appellant argues that the revocation sentence was excessive where the court considered an impermissible fact at sentencing, namely, the facts giving rise to his May 2020 charges, which were later *nolle prossed*. Appellant contends the court focused only on Appellant's prior history of arrests, convictions, and violations of parole, and ignored substantial mitigating evidence. (**See** Appellant's Brief at 17-20). Appellant insists the court imposed an unduly harsh sentence based on allegations of Appellant's new charges which were non-violent in nature and subsequently withdrawn. These arguments implicate the discretionary aspects of

---

[9] Appellant relies heavily on this Court's decision in **Commonwealth v. Giliam**, 233 A.3d 863 (Pa.Super. 2020), involving circumstances where the trial court had revoked probation based on new charges of which the defendant was ultimately acquitted. This Court held that "because [the appellant's] violation of probation was based solely on allegations of new criminal charges for which he was later acquitted, ultimately, no violation of probation occurred. Consequently, we conclude [the appellant's] probation revocation sentence is void." **Id.** at 868. Further, this Court noted that "[t]he instant case exemplifies why, as a practical matter, the appellate courts have cautioned against proceeding with a probation violation hearing before the trial on new charges where, as here, the new charges are the sole basis for the alleged probation violation." **Id.** at 869. Nevertheless, Appellant's reliance on **Giliam** is misplaced because: (1) that case involved an acquittal, not the Commonwealth's decision to *nolle prosse* charges; and (2) the new charges in **Giliam** had formed the **sole** basis for the alleged probation violation, whereas here, Appellant had committed technical violations as well.

sentencing.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Watson*, 228 A.3d 928, 935 (Pa.Super. 2020). Prior to reaching the merits of a discretionary aspect of sentencing issue:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal…; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence…; (3) whether appellant's brief has a fatal defect…; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* (quoting *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa.Super. 2013), *appeal denied*, 621 Pa. 682, 76 A.3d 538 (2013)).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (emphasis in original) (internal

quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Anderson**, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Swope**, 123 A.3d 333, 338 (Pa.Super. 2015) (internal citation omitted). A claim that the court relied on impermissible sentencing factors raises a substantial question warranting review. **Commonwealth v. Simpson**, 829 A.2d 334, 338 (Pa.Super. 2003). **See also Banks, supra**.

Here, Appellant timely filed a notice of appeal *nunc pro tunc* following reinstatement of his appellate rights, preserved his sentencing claims in a timely-filed motion for modification of sentence, and he included a Rule 2119(f) statement in his brief on appeal. Additionally, Appellant's claim that the court erroneously relied on the new charges which were later *nolle prossed* when imposing the revocation sentence presents a substantial question for our review. **See Banks, supra**; **Simpson, supra**.

Turning to the merits of this claim, however, we cannot agree with Appellant that the court's reliance at sentencing on the new charges was improper. Rather, "[t]he Commonwealth was not estopped from introducing

evidence of [Appellant's] arrest, the charges filed, or the factual allegations in support thereof. The revocation court's consideration of this evidence was not only permissible, but also required before it could impose a sentence of total confinement." ***Banks, supra*** at 403.

At the September 24, 2020 violation of probation hearing, Appellant initially conceded the technical violation of failing to report since October 21, 2019. Over Appellant's objection,[10] the Commonwealth then introduced testimony from Officer Joseph Marano. Officer Marano testified that he was on duty with Officer Bill Bittner on May 14, 2020. At approximately 3:00 a.m., the officers received a radio call to 4117 Ludlow Street in Philadelphia based on two individuals pulling on door handles inside a secured, fenced-in parking lot. Officer Marano observed a ladder propped up against the back fence of the parking lot. Officer Marano saw Appellant crouched down in the yard adjacent to the parking lot. Appellant was approximately 15 feet away from the ladder. Officer Marano also observed a silver Toyota Prius that appeared to be on a jack in the parking lot, raised higher than the other vehicles. Officer Marano heard from another officer that a reciprocating saw was recovered at the scene. Other than responding police, an off-site security guard, Appellant and his co-defendant, there was no one else at the scene. When Officer

---

[10] Appellant renewed his objection to proceeding to the violation of probation hearing prior to disposition of the new charges. The court again overruled the objection.

Marano tried to apprehend Appellant, Appellant fled. Officer Marano ultimately apprehended Appellant. The Commonwealth also introduced evidence of photographs from the crime scene depicting the ladder against the fence and the Toyota Prius that appeared to be raised on a jack. (*See* N.T. Hearing, 9/24/20, at 23-51). Thus, the record shows the Commonwealth properly introduced evidence of Appellant's arrest, the charges filed, Appellant's conduct underlying the arrest, and physical evidence, which the court was free to analyze when making its revocation sentencing decision. *See Banks, supra*. *Compare Joe, supra*.[11]

Regarding Appellant's claim that the court imposed an excessive sentence without consideration of mitigating factors,[12] this Court has held that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Swope, supra* at 339 (internal citation omitted). Thus, we will consider the merits of

_____

[11] We recognize that in *Banks, supra* and *Joe, supra* the Commonwealth *nolle prossed* the new charges **before** those appellants had proceeded to their violation of probation hearings, whereas in this case, the Commonwealth *nolle prossed* the new charges **after** the violation of the probation hearing. We view this as a distinction without a difference as it pertains to our analysis of this case.

[12] Appellant also claims the sentence was excessive based solely on his technical violations. Appellant bases this argument on the premise that the court erroneously considered his new charges. Because we have concluded that the court was permitted to consider the new charges, we need not address Appellant's argument concerning whether the sentence was excessive based only on technical violations of probation.

this claim as well.

We observe that "upon revocation [of probation] the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing." *Commonwealth v. Wallace*, 582 Pa. 234, 241, 870 A.2d 838, 842-43 (2005) (internal citation omitted). *See also* 42 Pa.C.S.A. § 9771(b). Nevertheless, we reiterate that the court shall not impose a sentence of total confinement upon revocation unless it finds that: "(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court." 42 Pa.C.S.A. § 9771(c).

Instantly, the court explained its sentencing rationale as follows:

> Here, this [c]ourt's comprehensive analysis of Appellant's repeated conduct directly addressed the ineffectiveness of the previously directed community-based probationary supervision. Appellant's original guilty pleas that he had entered in each of the four subject cases, had included admissions to criminal conduct that had occurred while he had been under other prior court-ordered probationary periods. The entry of the guilty pleas thus triggered commensurate re-entry of this [c]ourt's supervision and imposition of rehabilitative conditions….
>
> Thereafter, not surprisingly, Appellant had stopped reporting and then completely absconded from supervision. Once again, no payment of any of the relatively minimal amounts of restitution that had been due to any of his victims had been made. No fines or costs had been paid. No rehabilitative conditions had been met. No court-directed vocational training, no legitimate employment, and no drug or alcohol treatment had occurred. Appellant's assigned county of Philadelphia probation officer once again

had issued bench warrant cards due to his disappearance from our county. In the interim, Appellant had also apparently fled to Shenandoah Pennsylvania where he had caused law enforcement authorities to issue warrants for his arrest and apprehension. …

Appellant's next appearance before this [c]ourt had occurred only because of his apprehension and arrest…on May 14, 2020. Specifically, the credible and compelling evidence that had been introduced via testimony from the responding police officer and related physical evidence including photographs of the scene, unequivocally proved that Appellant and his associate had entered a locked and fenced-in parking lot owned by Elwyn Institute, Inc. at 4040 Ludlow Street, Philadelphia PA in the wee hours of the morning with the intent to steal catalytic converters from multiple contained parked vehicles.

These two males had been well-prepared for their criminal enterprise. They had been equipped with the tools of the trade including a police radio scanner, reciprocating saw and high ladder and a vehicle to enable escape. Unfortunately for them, the police officers that had responded had been faster sprinters. Not surprisingly, Appellant's first reaction to the appearance of law enforcement was to scale a wall and flee across a neighboring rooftop as part of his ongoing effort to evade capture.

This [c]ourt noted that Appellant's extensive criminal history had been replete with similar evasive tactics while under court-ordered supervision with reappearance only after apprehension and detention with new criminal charges stemming mostly from repeated thefts. Thus, as announced on the record, although the technical violations had been sufficient to warrant revocation, this [c]ourt deemed the circumstances of his new arrest to be relevant at the very least to evaluate his most recent mindset and his future likelihood of compliance with the terms of community-based non-custodial probation.

(Trial Court Opinion at 16-18). Thus, the court concluded: "The circumstances surrounding Appellant's 2020 arrest…undoubtedly illuminated Appellant's

- 27 -

likelihood that he would commit future crimes unless incarcerated." (*Id.* at 18).

On this record, we cannot say that the court abused its sentencing discretion upon revocation of Appellant's probation. *See Colon, supra*. The court provided ample reasons for its finding that Appellant's conduct indicated that it was likely he would commit another crime if not imprisoned to warrant imposition of a sentence of confinement upon revocation. *See* 42 Pa.C.S.A. § 9771(c). Further, the court had the benefit of a PSI report, so we can "presume that the trial court was aware of relevant information regarding [Appellant's] character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Bonner*, 135 A.3d 592, 605 (Pa.Super. 2016), *appeal denied*, 636 Pa. 657, 145 A.3d 161 (2016).

The court also reviewed a letter from Appellant's former employer stating that the employer would like to have Appellant back at work. (*See* N.T. Hearing, 9/24/20, at 52). The court made clear it considered the PSI report, mental health assessments, letters of recommendation on behalf of Appellant, along with attached family photographs. (*See* N.T. Hearing, 2/19/21, at 6-7). The court also heard testimony from Jessica Rogers, Appellant's girlfriend who is the mother of Appellant's daughter, about his positive contributions to her life and the hardship she and her children have endured since Appellant has been incarcerated. (*See id.* at 8-24). Defense counsel further informed the court that Appellant's mother had passed away

while he was incarcerated and that Ms. Rogers' bother, who was like a brother-in-law to Appellant, had also passed away. (*Id.* at 27). Therefore, the record demonstrates that the court considered the mitigating evidence presented by Appellant but imposed a sentence of total confinement based on Appellant's likelihood to reoffend.

Notwithstanding our disposition that none of Appellant's issues raised on appeal merits relief, our review of the record discloses that the probationary portion of Appellant's sentence is illegal. An appellate court can raise and address an issue concerning the legality of sentencing *sua sponte*, assuming proper jurisdiction. **Commonwealth v. Thorne**, ___ Pa. ___, 276 A.3d 1192 (2020). "Issues relating to the legality of a sentence are questions of law[.] Our standard of review over such questions is *de novo* and our scope of review is plenary." **Commonwealth v. Hawkins**, 45 A.3d 1123, 1130 (Pa.Super. 2012), *appeal denied*, 617 Pa. 629, 53 A.3d 756 (2012) (internal citation omitted).

Instantly, the court imposed the following original sentences in this case on April 16, 2015 relevant to the four dockets challenged on appeal: at docket 12397-2014, 1½ to 4 years' imprisonment for RSP and a consecutive 4 years' probation for conspiracy, plus restitution of $830.00. At docket 12400-2014, 1½ to 4 years' imprisonment for PIC and a consecutive 4 years' probation for conspiracy. At docket 12401-2014, 1½ to 4 years' imprisonment for RSP and a consecutive 4 years' probation for conspiracy. At docket 12402-2014, 1½

to 4 years' imprisonment for RSP and a consecutive 4 years' probation for conspiracy, plus restitution of $600.00. The court imposed each docket concurrently, for an aggregate sentence of 1½ to 4 years' imprisonment, plus 4 years' probation. (**See** N.T. Hearing, 4/16/15, at 16-20). (**See also** Sentencing Order, 4/16/15, at each underlying docket). According to the sentencing orders, the sentences would begin on April 16, 2015. (**See id.**)

Appellant absconded on October 21, 2019, which Appellant stipulated to as a technical violation of his supervision. Assuming that Appellant began serving the confinement portion of his sentences on April 16, 2015 as set forth in the respective sentencing orders, then Appellant would have completed the terms of his imprisonment sentences when he absconded, and he would have been on probation for his conspiracy convictions at that time. As well, Appellant would have been serving the probationary portion of his sentences when he incurred charges for the new offenses on May 14, 2020.

On February 19, 2021, the court imposed the following revocation sentences: At docket 12397-2014, 2½ to 5 years' imprisonment for conspiracy and a consecutive 1 year of probation for RSP. At docket 12400-2014, 2½ to 5 years' imprisonment for conspiracy and a consecutive term of 1 year of probation for PIC. At docket 12401-2014, 2½ to 5 years' imprisonment for conspiracy and a consecutive 1 year of probation for RSP. At docket 12402-2014, 2½ to 5 years' imprisonment for conspiracy and a consecutive 1 year

of probation for RSP.[13]  (**See** N.T. Sentencing, 2/19/21, at 55-59).  The court imposed the confinement portions of the sentences at dockets 12400-2014 and 12401-2014 consecutively, for an aggregate term of 5 to 10 years' imprisonment, plus 4 years' probation at these four dockets.  (**See** Trial Court Opinion at 6-7).  The court also resentenced Appellant to pay the original amounts of restitution.

The problem with this sentencing scheme, however, is that the court resentenced Appellant on each of the RSP convictions and the PIC conviction even though Appellant had already finished serving those sentences.  Notably, the court had **not** imposed probationary tails on any of those counts such that the court would have had authority to revoke probation and resentence Appellant for those crimes.  Rather, the April 16, 2015 sentencing orders make clear that the court imposed straight terms of imprisonment on those counts.[14]  Because Appellant had already finished serving those terms of imprisonment when he violated the terms of his supervision, the court could not resentence Appellant for those offenses.  Thus, the probationary terms imposed at each

_____

[13] The court also imposed a term of 5 years' probation at docket 479-2014, which is not challenged in this appeal.  The court imposed all probationary terms concurrent to one another but consecutive to the confinement.  (**See** Trial Court Opinion at 7).

[14] In other words, the court did not originally impose "split sentences" for the RSP or PIC convictions.  ***See, e.g., Commonwealth v. Crump***, 995 A.2d 1280 (Pa.Super. 2010), *appeal denied*, 608 Pa. 661, 13 A.3d 475 (2010) (explaining that split sentence is where court imposes term of incarceration followed by term of probation for conviction).

of the above-captioned dockets are illegal and we must vacate and remand for resentencing. **See Commonwealth v. Bartrug**, 732 A.2d 1287 (Pa.Super. 1999), *appeal denied*, 561 Pa. 651, 747 A.2d 896 (1999) (explaining that illegal sentence must be corrected; if trial court errs in its sentence on one count in multi-count case, then all sentences for all counts will be vacated so that court can restructure its entire sentencing scheme).[15] Accordingly, Appellant's issues on appeal merit no relief, but we vacate the probationary portion of Appellant's revocation sentences and remand for resentencing.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2023

---

[15] We recognize that due to the five-year probation sentence at docket 479-2014 (not on appeal), the aggregate sentence for the above-captioned dockets and that docket remains the same. Nevertheless, the best resolution is to vacate and remand for resentencing so the court can restructure the sentences for the dockets at issue in this appeal as it sees fit.